787 A.2d 887

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
AL–MUHHYE ALLAH, A/K/A ANDREW SIMMONS,
DEFENDANT–APPELLANT.

Argued October 9, 2001—Decided January 17, 2002.

270

*Mark H. Friedman*, Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney).

*Maryann K. Lynch*, Acting Assistant Prosecutor, argued the cause for respondent 2 (*Donald C. Campolo*, Acting Essex County Prosecutor, attorney).

*Steven G. Sanders* argued the cause for amicus curiae American Civil Liberties Union of New Jersey (*Arseneault & Fassett* and *Edward L. Barocas*, Legal Director, attorneys; *Mr. Sanders, Mr. Barocas, Lenora M. Lapidus* and *J.C. Salyer*, of counsel and on the briefs).

*Blair R. Zwillman* argued the cause for amicus curiae The Association of Criminal Defense Lawyers of New Jersey (*Zwillman & Zwillman*, attorneys).

*Gerard C. Sims, Jr.*, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

LaVECCHIA, J.

In this appeal defendant claims he was denied the effective assistance of counsel because his attorney failed to raise a double jeopardy defense prior to defendant's trial on various drug offenses after the attorney had objected to an earlier grant of a mistrial on the same charges. The Appellate Division determined that defendant waived his double-jeopardy claim by failing to file a *Rule* 3:10–2 motion raising the defense. The panel also found that the consequences of the attorney's decision were not sufficient to establish the showing of prejudice necessary to sustain a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.2d* 674 (1984), because defendant's complaint was that he was subjected to a second trial, not that the second trial was conducted unfairly. We hold that on the facts in this record defendant was denied the effective assis-

tance of counsel and is entitled, therefore, to reversal of his conviction.

## I.

In January 1997, police officers conducted a vehicular stop of the automobile in which defendant, Al–Muhhye Allah, and co-defendant, Geraldo Garcia, were traveling. Garcia, the driver, had failed to obey a stop sign. One of the officers noticed an open cardboard box containing envelopes of heroin on the floor of the passenger's side of the vehicle and brought that observation to the attention of defendant and Garcia. Defendant ran from the vehicle, but was caught and arrested. Garcia was prevented from fleeing.

Defendant and Garcia were indicted on four counts: (1) second degree conspiracy, contrary to *N.J.S.A.* 2C:5–2 (Count One); (2) third degree possession of a controlled dangerous substance (heroin), contrary to *N.J.S.A.* 2C:35–10a(1) (Count Two); (3) second degree possession with intent to distribute, contrary to *N.J.S.A.* 2C:35–5b(2) (Count Three); and (4) third degree possession with intent to distribute within 1000 feet of a school, contrary to *N.J.S.A.* 2C:35–7 (Count Four). Prior to defendant's trial, Garcia entered into a plea agreement with the State in accordance with which he pled guilty to Counts One, Three, and Four and agreed to testify at defendant's trial. When providing the factual basis for his plea, Garcia stated that he and defendant jointly purchased the heroin, which they intended to sell, and that at the time of the arrest the box with the heroin was under the driver's seat of the car. At the time of jury selection in defendant's trial, Garcia had not been sentenced.

Defendant's first trial ended mid-trial when the court granted a mistrial on motion by the State. The following facts are relevant to the trial court's finding of manifest necessity for the mistrial.

At trial, defendant's counsel subpoenaed Garcia as a defense witness. Notwithstanding the negotiated plea agreement that required Garcia to testify for the State, the State concluded its

case without calling Garcia. Defense counsel then called Garcia to testify. During direct examination Garcia disclosed that he voluntarily pled guilty to the charges contained in the indictment and that as part of his plea agreement he agreed to testify at defendant's trial in exchange for a more lenient sentence. Concerning the charges against defendant, Garcia testified that on the evening of his arrest, he was driving an automobile with defendant as a passenger. Garcia stated that he placed a box containing small envelopes of heroin under the driver's seat. In addition to the location of the box, Garcia described the configuration of the box as it appeared on the car floor along with some newspapers, implying that the heroin could not be seen. Garcia's testimony suggested that defendant was innocent.

While Garcia's direct examination was in progress, his attorney entered the courtroom on an unrelated matter. When the trial court declared a recess, Garcia's attorney informed the court that she was not aware that her client was to testify that day. She requested an opportunity to speak to him because, although Garcia had previously entered a guilty plea, he had not been convicted and sentenced, and thus his case remained open. She argued that Garcia could assert his Fifth Amendment right against self-incrimination and refuse to testify. The trial court allowed the consultation with Garcia.

When the trial reconvened, defense counsel announced that he had no further questions for the witness. In response to the State's first question on cross-examination, Garcia asserted his Fifth Amendment right against self-incrimination and the State moved for a mistrial. Defense counsel immediately objected to the request for a mistrial, contending that the defense's actions did not cause the mistrial and that other options were available to the court:

> The assertion that a mistrial in this case was caused by the [d]efense, I just do not understand. Because from the very beginning, with regard to my intention to call Mr. Garcia as a witness in this case, my intention was made known to everyone in this case from the very outset....

This case was pled out Tuesday afternoon. I left here Tuesday afternoon with the expectation that Mr. Garcia was going to be a witness for the State; that he was going to testify against my client at his trial; that he was going to implicate my client as his co-defendant. That was a requirement of the plea. As painfully as he gave that factual basis, and had to be coerced through the factual basis, that was a requirement of his plea....

Now, the next day Wednesday, February 4th, we come to this Court. And we don't really know for sure if Mr. Garcia is going to testify in behalf of the State.... But then we're told during the course of the [p]rosecutor's opening, that Mr. Garcia is not going to be called as a witness for the State. Before I said anything to the jury about Mr. Garcia perhaps testifying in behalf of [the] defense, I asked for a side bar. I told your Honor and [the prosecutor]. I just think I heard [the prosecutor] say he is not going to call Mr. Garcia. I intended to. I said I intended to because I'm going to tell that jury that Mr. Garcia pled guilty. We all agreed that I could tell the jury that he pled guilty, as long as I was making the representation that I intended to call him....

I get a subpoena....

Mr. Garcia is now called as a defense witness....

I asked him a couple of questions about his plea. I ask him one question, totally consistent with what he said in his plea hearing that the box was found underneath the driver's seat. That is exactly what he said. That's exactly what he said in his plea hearing. And I asked him how is the box bound. Now defense counsel is causing a mistrial in this trial, in this case[?] Really, [the prosecutor] could guarantee no mistrial in this case right now. Because I just said I'm not going to ask this gentleman another question on direct. [The prosecutor] can cross examine this man to his heart's content [.] ...

So I have a serious problem with a mistrial .... I guess your Honor has to entertain a mistrial. But to say defense caused a mistrial in this case; I don't get it. I think that this case should be allowed to go to the jury. I think you should tell this jury to disregard that. Or better yet, ... let [the prosecutor] cross examine Mr. Garcia to his heart's content.

### The trial court granted the mistrial, stating that:

It is clear to me that the problem here is that at a point in direct examination of a co-defendant who had previously entered a plea of guilty, who hadn't been sentenced. So clearly, the Fifth Amendment privilege still attaches. He decides after consulting with counsel that he wishes to ... [take] the Fifth Amendment. Defense counsel indicates that direct was concluded. [The][p]rosecutor clearly has a right to cross-examination.... For whatever reason, the decision to take the Fifth is not made until after direct examination.... Clearly[,] the witness ... after consulting with counsel[,] has a right to take the Fifth Amendment. Clearly[,] that results in creating a very unfair playing field. Can I tell the jury to disregard direct examination? I can tell them that ... [but,] I don't think I can erase it from their minds.... I don't believe that the prejudice resulting from the error is of the nature which can be effectively cured by [a] cautionary instruction or any other

curative step. I think I have no recourse other than to declare a mistrial.... That is without prejudice.

A second trial was held before another judge. At no time prior to or during trial did defense counsel move for dismissal of the indictment on double jeopardy grounds. Defendant was convicted of third degree possession of a controlled dangerous substance (Count Two) and acquitted on all other counts. He was sentenced on Count Two to a five-year term, with a two-year period of parole ineligibility. The trial court imposed the appropriate fines and penalties.

Defendant appealed and the Appellate Division affirmed the conviction and sentence. *State v. Allah*, 334 *N.J.Super.* 516, 760 *A.*2d 328 (2000). The panel determined that Garcia was not entitled to have relied on the privilege against self-incrimination after he testified on direct examination. *Id.* at 523, 760 *A.*2d 328. Therefore, the trial court had available other alternatives to a mistrial, such as requiring Garcia to respond to questioning on cross-examination. *Id.* at 523–24, 760 *A.*2d 328. Thus, there was no manifest necessity for the grant of a mistrial during defendant's first trial. *Ibid.* Nonetheless, the panel held that defendant waived his right to claim a double jeopardy defense because he failed to raise the defense prior to his second trial. *Id.* at 528, 760 *A.*2d 328. The panel also rejected defendant's contention that he was entitled to relief from the waiver of his double jeopardy claim because his attorney's failure to raise the defense prior to the retrial constituted ineffective assistance of counsel. *Ibid.* The panel did not agree with defendant's argument that he had demonstrated "good cause" for relief from the waiver of the defense under Rule 3:10–2(c). *Ibid.* Furthermore, it declined to review the double jeopardy claim as a matter of plain error. *Ibid.*

Finally, the panel held that defense counsel's failure to move to dismiss the indictment on double jeopardy grounds did not violate defendant's constitutional right to effective assistance of counsel. *Id.* at 529, 760 *A.*2d 328. The panel did determine that the deficiency prong of the test for ineffective assistance enunciated in *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at

693 (1984), was satisfied because a reasonably competent attorney would have filed the motion to bar the second trial. *Allah, supra,* 334 *N.J.Super.* at 528, 760 *A.*2d 328. But the panel concluded that the prejudice prong of *Strickland* was not met. *Id.* at 528–29, 760 *A.*2d 328. The court stated:

> There is no sense in which it can be said that his attorney's failure to file a timely motion to dismiss the indictment rendered the actual trial unfair. The conviction was not caused by ineffective representation during the trial; nor was the trial marred by the admission of constitutionally tainted evidence as a result of pretrial ineffectiveness. Recognition of the right to claim double jeopardy at this point would serve little purpose, other than permitting defendant to avoid a conviction fully supported by the evidence, since the defendant has already undergone the stress and expense of the second trial.
>
> [*Ibid.*]

We granted certification, 167 *N.J.* 633, 772 *A.*2d 934 (2001), to review defendant's claim that he did not waive his right to claim relief from double jeopardy, that ineffective assistance of counsel constitutes good cause for relief from the waiver provision of *Rule* 3:10–2, and that his conviction resulting from the second trial should be reversed because he was denied effective assistance of counsel.

## II.

### A.

The principle that no person is to be placed in jeopardy "more than once for the same offense" traces its roots to a variety of early sources. *United States v. Wilson,* 420 *U.S.* 332, 339–42, 95 *S.Ct.* 1013, 1020–21, 43 *L.Ed.*2d 232, 239–41 (1975); *State v. Currie,* 41 *N.J.* 531, 535–36, 197 *A.*2d 678 (1964) (noting that Blackstone recorded that "universal common law maxim" in his Commentaries); *see generally,* Michael Kline, *Wading in the Sargasso Sea: The Double Jeopardy Clause, Non–Capital Sentencing Proceedings, and California's "Three Strikes" Law Collide in Monge v. California,* 27 *Pepp. L.Rev.* 861, 863–65 (2000) (discussing lengthy history of common law double jeopardy protections compared to more recent legislative history of double jeopar-

dy). The Fifth Amendment of the United States Constitution embodies that principle, and it is binding on the states by virtue of the Fourteenth Amendment. *State v. Ebron,* 61 *N.J.* 207, 214–15, 294 *A.*2d 1 (1972) (citing *Benton v. Maryland,* 395 *U.S.* 784, 796, 89 *S.Ct.* 2056, 2063, 23 *L.Ed.*2d 707, 717 (1969)). The United States Constitution states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *U.S. Const.* amend. V. The New Jersey Constitution also provides: "No person shall, after acquittal, be tried for the same offense." *N.J. Const.* art. I, ¶ 11. Although the language of *U.S. Const.* amend. v. and *N.J. Const.* art. I, ¶ 11 differ, "they have come to be recognized as substantially coextensive in principle and scope." *Ebron, supra,* 61 *N.J.* at 214, 294 *A.*2d 1 (citing *State v. Farmer,* 48 *N.J.* 145, 168, 224 *A.*2d 481 (1966), *cert. denied,* 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.*2d 335 (1967); *State v. Williams,* 30 *N.J.* 105, 122, 152 *A.*2d 9 (1959)). Individuals are constitutionally protected against being tried twice for the same offense. *State v. Loyal,* 164 *N.J.* 418, 435, 753 *A.*2d 1073 (2000).

█ In addition to the constitutional prohibition, *N.J.S.A.* 2C:1–9 provides statutory protection from double jeopardy:

A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:

. . .

d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn. . . . Termination under any of the following circumstances is not improper:

. . .

(3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

█ In a non-jury trial, jeopardy attaches when the first witness is sworn. *State v. Lynch,* 79 *N.J.* 327, 341, 399 *A.*2d 629 (citing *Crist v. Bretz,* 437 *U.S.* 28, 37 n. 15, 98 *S.Ct.* 2156, 2162 n. 15, 57 *L.Ed.*2d 24, 32 n. 15 (1978)). In a jury trial, jeopardy attaches after the jury is impaneled and sworn. *Lynch, supra,* 79

*N.J.* at 341, 399 *A.*2d 629 (citing *Crist, supra,* 437 *U.S.* at 38, 98 *S.Ct.* at 2162, 57 *L.Ed.*2d at 33). *See also Farmer, supra,* 48 *N.J.* at 169, 224 *A.*2d 481 (holding that "[u]nder well-established principles, jeopardy attaches to a defendant when he is put on trial in a court of competent jurisdiction upon a valid indictment and a jury is impaneled and sworn to determine the issue of his guilt or innocence of the crime charged"). "A defendant is generally entitled to have a trial proceed to its conclusion, to be free from the harassment of successive prosecutions, and to receive only one punishment for an offense." *Lynch, supra,* 79 *N.J.* at 340–41, 399 *A.*2d 629 (citing *Downum v. United States,* 372 *U.S.* 734, 736, 83 *S.Ct.* 1033, 1034, 10 *L.Ed.*2d 100, 102–03 (1963); *Wade v. Hunter,* 336 *U.S.* 684, 689, 69 *S.Ct.* 834, 837, 93 *L.Ed.* 974, 978 (1949)).

However, termination of a trial after jeopardy attaches does not necessarily prohibit subsequent re-prosecution. *Loyal, supra,* 164 *N.J.* at 435, 753 *A.*2d 1073 (citing *Lynch, supra,* 79 *N.J.* at 342, 399 *A.*2d 629). Only the improper termination of proceedings bars retrial. *Loyal, supra,* 164 *N.J.* at 435, 753 *A.*2d 1073 (citing *State v. Gallegan,* 117 *N.J.* 345, 353, 567 *A.*2d 204 (1989); *State v. Dunns,* 266 *N.J.Super.* 349, 363, 629 *A.*2d 922 (App.Div.), *certif. denied,* 134 *N.J.* 567, 636 *A.*2d 524 (1993); *State in the Interest of D.P.,* 232 *N.J.Super.* 8, 13, 556 *A.*2d 335 (App.Div. 1989)). *See N.J.S.A.* 2C:1–9. "Where the court finds a sufficient legal reason and manifest necessity to terminate a trial, the defendant's right to have his initial trial completed is subordinated to the public's interest in fair trials and reliable judgments." *Loyal, supra,* 164 *N.J.* at 435, 753 *A.*2d 1073 (citing *Wade, supra,* 336 *U.S.* at 689, 69 *S.Ct.* at 837, 93 *L.Ed.* at 978).

Whether manifest necessity mandates the grant of a mistrial depends on the specific facts of the case and the sound discretion of the court. *Loyal, supra,* 164 *N.J.* at 435, 753 *A.*2d 1073. *See United States v. Perez,* 22 *U.S.* (9 Wheat.) 579, 580, 6 *L.Ed.* 165, 165 (1824) (stating that "[c]ourts of justice [have] ... the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration,

there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject...."). That discretion is exercised improperly, however, if the court has an appropriate alternative course of action. *Loyal, supra,* 164 *N.J.* at 436–37, 753 *A.*2d 1073 (quoting *State v. Rechtschaffer,* 70 *N.J.* 395, 410–11, 360 *A.*2d 362 (1976)).

■ The record in this matter reflects that the State moved for a mistrial after Garcia concluded his direct examination for the defense and then refused to answer questions during cross-examination. The Appellate Division determined that Garcia was not entitled to rely on the Fifth Amendment privilege against self-incrimination, and that therefore his invocation of the privilege did not create manifest necessity warranting a new trial. *Allah, supra,* 334 *N.J.Super.* at 523–24, 760 *A.*2d 328 (noting that "unexplored, viable alternative to granting a mistrial was to rule that the privilege had been waived and to order the witness to testify"). Because in its view the trial court had a viable alternative to a mistrial, the Appellate Division held that termination of the trial after jeopardy attached was improper. *Id.* at 524, 760 *A.*2d 328. The State did not cross-petition for certification to challenge the Appellate Division's determination that manifest necessity was not present. *R.* 2:12–11. Thus, we review defendant's claim of double jeopardy from the perspective of the Appellate Division's conclusion that the mistrial was granted erroneously, without the presence of "sufficient legal reason" and without "a manifest or absolute or overriding necessity." *Allah, supra,* 334 *N.J.Super.* at 524, 760 *A.*2d 328 (citing *N.J.S.A.* 2C:1–9d(3)).

## B.

■ *Rule* 3:10–2(c) sets forth those defenses and objections that must be raised before trial:

The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation, except as otherwise provided by *R.* 3:10–2(d) (defenses which may be raised only

before or after trial) and *R.* 3:10–2(e) (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.

The plain language of the *Rule* provides that the defense of double jeopardy must be raised by motion before trial and that the failure to present the defense constitutes a waiver. *R.* 3:10–2(c); see *Currie, supra,* 41 *N.J.* at 535, 197 *A.*2d 678 (calling attention to that practice requirement).

 Requiring defense counsel to file a timely motion to preclude a second trial on double jeopardy grounds promotes judicial economy and efficiency by preventing the waste of time and resources of judges, counsel, and juries. Asserting the double jeopardy defense before trial promotes order in the judicial process, *State v. McKnight,* 52 *N.J.* 35, 48–49, 243 *A.*2d 240 (1968), and saves both the State and the defendant the expense of a trial. *State v. Parris,* 175 *N.J.Super.* 603, 606, 421 *A.*2d 604 (App.Div. 1980).

 *Rule* 3:10–2(c) allows for relief from the *Rule*'s waiver provision on a demonstration of good cause. Defendant claimed that the failure of his lawyer to raise the double jeopardy issue before the retrial constituted ineffective assistance of counsel and thus met the good cause standard. Based on its determination that defendant did not establish a claim for ineffective assistance of counsel, the Appellate Division held that he failed to demonstrate good cause. *Allah, supra,* 334 *N.J.Super.* at 528–29, 760 *A.*2d 328.

## C.

The Sixth Amendment to the United States Constitution pertains to the rights of the accused and states, in pertinent part: "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense." *U.S. Const.* amend. XI. In *Strickland v. Washington, supra,* the Supreme Court held that the Sixth Amendment guarantees criminal defendants the right to "effective assistance of counsel." 466 *U.S.* at 686, 104 *S.Ct.* at

2063, 80 *L.Ed.*2d at 692 (citing *McMann v. Richardson,* 397 *U.S.* 759, 771 n. 14, 90 *S.Ct.* 1441, 1449 n. 14, 25 *L.Ed.*2d 763, 773 n. 14 (1970)).

*Strickland* recognized that an attorney can deprive a defendant of the right to effective assistance of counsel by failing to render adequate legal advice. 466 *U.S.* at 686, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 692 (quoting *Cuyler v. Sullivan,* 446 *U.S.* 335, 344, 100 *S.Ct.* 1708, 1716, 64 *L.Ed.*2d 333, 344 (1980)). In *Strickland,* the Supreme Court pronounced a two-part test for evaluating claims of "actual" ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was *deficient.* This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the *deficient performance prejudiced the defense.* This requires a showing that counsel's errors were so serious as to *deprive the defendant of a fair trial, a trial whose result is reliable.* Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
>
> [*Id.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693 (emphasis added).]

The *Strickland* Court further elaborated on the prejudice prong, noting:

> [T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, ... and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness[ ].... The defendant must show that there is a reasonable probability that, *but for counsel's unprofessional errors, the result of the proceeding would have been different.* A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> [*Id.* at 695, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698 (citations omitted) (emphasis added).]

The standard for ineffective assistance of counsel under the New Jersey Constitution is the same as the guarantee under the federal constitution. *State v. Fisher,* 156 *N.J.* 494, 500, 721 *A.*2d 291 (1998) (citing *State v. Fritz,* 105 *N.J.* 42, 53–58, 519 *A.*2d 336 (1987)).

Although *Strickland* instructs that satisfaction of the prejudice prong requires proof that counsel's deficient performance deprived the defendant of "a fair trial," that is, "a trial whose result is

reliable," 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693, the opinion also states that prejudice may be shown when a defendant can point to the reality that but for counsel's deficiency, the outcome would have been different. *Id.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698. In *Williams v. Taylor,* 529 *U.S.* 362, 120 *S.Ct.* 1495, 146 *L.Ed.*2d 389 (2000), the Supreme Court reiterated that "[t]o establish prejudice [the defendant] 'must show that there is reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.' " *Id.* at 390–91, 120 *S.Ct.* at 1511–12, 146 *L.Ed.*2d at 416 (quoting *Strickland, supra,* 466 *U.S.* at 695, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698).

This Court has viewed the prejudice prong in like manner, applying the *Strickland* test. *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698). *See also Fisher, supra,* 156 *N.J.* at 500, 721 *A.*2d 291 (applying *Strickland*). The question raised as a result of the Appellate Division decision is whether a showing of prejudice can be demonstrated only where the conviction is rendered unreliable by "ineffective representation *during* the trial" or by some deficient performance in trial counsel's pretrial work that led to the introduction of constitutionally tainted evidence. *Allah, supra,* 334 *N.J.Super.* at 529, 760 *A.*2d 328 (emphasis added).

### III.

### A.

Defendant contends that he was denied the effective assistance of counsel because of his lawyer's failure to raise what would have been a meritorious double jeopardy defense. He maintains that the ineffective assistance of counsel claim is separate and distinct from his arguments that he satisfies the good cause exception to the waiver provision of *Rule* 3:10–2, or that his double jeopardy claim should be reviewed under a plain error analysis.

Generally, ineffective assistance of counsel claims are not entertained on direct appeal "because such claims involve allegations and evidence that lie outside the trial record." *State v. Preciose*, 129 *N.J.* 451, 460, 609 *A.*2d 1280 (1992). In this case, however, defendant should not be required to wait until post-conviction relief to raise the issue because the trial record discloses the facts essential to his ineffective assistance claim. The record establishes that defense counsel did not make a *Rule* 3:10–2(c) motion before or during defendant's second trial. Also, the record reveals that defense counsel objected to the grant of a mistrial during defendant's first trial. Although his objection did not state specifically that there was no manifest necessity for the mistrial, he essentially made that argument by contending that alternatives to a mistrial were available to the trial court, such as instructing the jury to disregard Garcia's direct testimony or ordering Garcia to testify on cross-examination.

As noted earlier, improper termination of a defendant's trial after jeopardy attaches bars retrial. When a defendant's mistrial is granted without manifest necessity or the presence of sufficient legal grounds, the termination is improper. *Loyal, supra,* 164 *N.J.* at 435, 753 *A.*2d 1073; *N.J.S.A.* 2C:1–9d(3); *see Farmer, supra,* 48 *N.J.* at 169, 224 *A.*2d 481 ("If the jury is discharged before [the judgment by the court or verdict of the jury] without [defendant's] consent or without legal justification, the abortive ending is equivalent to acquittal and bars retrial."). Accordingly, as a result of the trial court's erroneous grant of a mistrial, defendant had available a double jeopardy defense to the State's attempt to subject him to retrial. At oral argument, all counsel acknowledged that the failure to file the double jeopardy defense motion was due to attorney negligence. No assertion of strategy complicates this analysis. Accordingly, counsel's failure to file a double jeopardy defense motion satisfies the deficiency prong of *Strickland,* as the Appellate Division found. *Allah, supra,* 334 *N.J.Super.* at 528, 760 *A.*2d 328.

The question remains whether the prejudice prong of the *Strickland/Fritz* test for ineffective assistance of counsel has been satisfied here. We have no doubt that it was. Although *Strickland* does state that satisfaction of the prejudice prong requires proof that counsel's deficient performance deprived defendant of "a fair trial, a trial whose result is reliable," 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693, the decision further instructs that prejudice may be demonstrated when a defendant can point to the reality that, but for counsel's deficiency, the outcome would have been different. *Id.* at 694, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 698. Had defense counsel filed for dismissal on what was an obvious and meritorious double jeopardy defense claim, there is no doubt that the outcome of the second trial would be different. Indeed, there would likely have been no second trial. At the very least, had counsel filed the motion, defendant's claim of double jeopardy would have been preserved. Counsel's inaction plainly prejudiced defendant.

Case law outside our jurisdiction supports the proposition that a defense attorney's failure to raise a meritorious double jeopardy defense can be deficient performance on the part of counsel that is prejudicial to a convicted defendant under *Strickland*. In *Wilcox v. McGee*, 241 *F.*3d 1242, 1244 (9th Cir.2001), the defendant was indicted for first-degree burglary. The jury was empaneled and sworn. *Ibid.* During the first witness's examination, the prosecutor realized that the indictment incorrectly listed the date and address of the burglary. *Ibid.* The state moved to amend the indictment to correct the error or, alternatively, to dismiss without prejudice so that it could seek a new indictment. *Ibid.* Although defense counsel objected on the basis that because jeopardy attached the dismissal should be with prejudice, the court dismissed the indictment without prejudice. *Ibid.* The defendant subsequently was re-indicted and convicted of first-degree burglary and filed a petition for post conviction relief in which he argued that he had been denied effective assistance of counsel. *Ibid.* The petition was denied by the state court, and the defendant then filed a federal habeas corpus petition. *Ibid.*

The Ninth Circuit Court of Appeals held that dismissing the indictment over defendant's objection precluded further prosecution on the same charges unless the dismissal was required by "manifest necessity." *Ibid.* The court found that no such necessity existed. *Id.* at 1245. Accordingly, defense counsel's failure "to move for dismissal of the second indictment on grounds that were both obvious and meritorious," *id.* at 1246, in conjunction with the absence of a perceived strategy for inaction, was held to be clearly prejudicial to the defendant because it exposed him to a second trial in violation of the Double Jeopardy Clause of the Fifth Amendment. *Ibid.* The "failure to file a motion that would have preserved [the defendant's] double jeopardy claim, clearly prejudiced [the defendant]." *Ibid.* Relying on *Strickland,* the court held that counsel was constitutionally ineffective for failing to move to dismiss the indictment at the second trial. *Ibid.* (citing *Strickland,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693.)

In *Murphy v. Puckett,* 893 *F.*2d 94 (5th Cir.1990), the defendant was convicted of capital murder with burglary and armed robbery as the underlying felonies. *Id.* at 95. The defendant was charged in a later and separate capital murder indictment for the same armed robbery and was convicted. *Ibid.* Defense counsel failed to raise the double jeopardy defense in the armed robbery trial. *Ibid.* Although the district court held that the defendant procedurally was barred from directly raising a double jeopardy claim, the Fifth Circuit held that defense counsel was ineffective because he failed to raise double jeopardy as a defense at the defendant's second trial. *Id.* at 95–96.

The Fifth Circuit held that the defendant satisfied *Strickland*'s prejudice prong, *ibid.,* noting that "[i]f counsel had asserted the double jeopardy defense, the state court could not have tried [him] for armed robbery. If [the defendant] had not been tried, he obviously would not have been convicted. Thus, the outcome of the trial was vitally affected by counsel's dereliction." *Id.* at 96. *See also People v. Levan,* 285 *Ill.App.*3d 347, 221 *Ill.Dec.* 14, 674 *N.E.*2d 807, 809 (1996) (noting that even if motion to dismiss on

double jeopardy grounds was untimely, reversal would be warranted on basis of ineffective assistance of counsel because counsel failed to raise double jeopardy defense in timely manner before trial court).

The State and the Attorney General cite *State v. Lee,* 211 *N.J.Super.* 590, 595–600, 512 *A.*2d 525 (App.Div.1986), for the proposition that the prejudice prong of *Strickland* is limited to the effect of defense counsel's actions on the trial itself. The parties' reliance on *Lee* is misplaced.

*Lee*'s broad statements that prejudice exists only when there has been an unfair trial as a result of attorney negligence conflicts with the holdings in both *Strickland* and *Williams.* Both decisions direct the use of an outcome-determinative test to decide whether prejudice occurred. *Strickland, supra,* 466 *U.S.* at 695, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698; *Williams, supra,* 529 *U.S.* at 390–97, 120 *S.Ct.* at 1511–15, 146 *L.Ed.*2d at 416–20 (noting that Virginia Supreme Court's decision "turned on its erroneous view that a 'mere' difference in outcome is not sufficient to establish constitutionally ineffective assistance of counsel"). *See also Laboa v. Calderon,* 224 *F.*3d 972, 980–82 (9th Cir.2000) (discussing *Strickland*'s outcome-determinative test after *Williams* and noting that defendant could not establish prejudice because if counsel filed successful motion to suppress, "the result of the proceeding would have been no different"). In *Lee,* the defendant could not prove prejudice under *Strickland*'s outcome-determinative test because his counsel's ineffective performance deprived the defendant only of a dismissal without prejudice. *Lee* involved a grand jury error. 211 *N.J.Super.* at 595, 512 *A.*2d 525. Therefore, the panel observed that most grand jury errors are rendered moot by a conviction after a fair trial. *Lee, supra,* 211 *N.J.Super.* at 598–600, 512 *A.*2d 525 (citing *United States v. Mechanik,* 475 *U.S.* 66, 106 *S.Ct.* 938, 89 *L.Ed.*2d 50 (1986)). Because a properly preserved claim could not have led to a reversal, counsel's negligent failure to preserve the claim of grand jury violations did not prejudice the defendant. *Id.* at 602, 512 *A.*2d 525. The defendant

in *Lee*, unlike the defendant in this appeal, did not demonstrate that his attorney's negligence had "deprived him of a substantive ... right to which [the] law entitle[d] him." *Williams, supra*, 529 *U.S.* at 392–93, 120 *S.Ct.* at 1513, 146 *L.Ed.*2d at 417.

The decision in *Lee* does not support the proposition that all pre-trial attorney negligence is "cured" or rendered harmless by a subsequent fair trial. In *Lee*, the legal issue that counsel neglected to raise, namely the defect in the grand jury presentment, was rendered moot by a subsequent fair trial. 211 *N.J.Super.* at 599, 512 *A.*2d 525. Those circumstances contrast sharply with errors that are not rendered harmless or moot by a subsequent fair trial, such as the error here-the failure to make a pre-trial motion-that led to a proceeding that never should have occurred. *See Puckett, supra*, 893 *F.*2d at 97 (holding that double jeopardy violation not cured by conviction after fair trial); *Rechtschaffer, supra*, 70 *N.J.* at 416, 360 *A.*2d 362 (same). *See also Wanatee v. Ault*, 101 *F.Supp.*2d 1189, 1198 (N.D.Iowa 2000), *aff'd*, 259 *F.*3d 700 (8th Cir.2001) (holding that prejudice standard of *Strickland* met where ineffective assistance of counsel involved pre-trial plea bargaining; noting that prejudice prong satisfied because case would not have reached factfinder if not for counsel's ineffectiveness).

The Appellate Division below took too narrow a view when it considered only conduct by counsel that "rendered the actual trial unfair." *Allah, supra*, 334 *N.J.Super.* at 529, 760 *A.*2d 328. Defendant was prejudiced by counsel's deficient performance because he had to submit to the second trial. Counsel already had objected to the mid-trial mistrial on grounds sufficient to rebut the contention that manifest necessity for the mistrial existed. A timely motion by counsel brought pursuant to *Rule* 3:10–2(c) would have raised a meritorious double jeopardy claim, or at the very least preserved that claim for defendant. There is no question that counsel's deficiency caused defendant prejudice that rises to the level necessary to establish ineffective assistance of

counsel under *Strickland.* *See Puckett, supra,* 893 *F.*2d at 95–96; *Wilcox, supra,* 241 *F.*3d at 1245–46.

Therefore, we conclude that defendant has shown ineffective assistance of counsel due to the failure of counsel to raise the double jeopardy defense after having objected to the existence of sufficient grounds for the grant of a mistrial. Defendant is entitled to reversal of his conviction and dismissal of the second indictment with prejudice.

## B.

In view of our disposition of defendant's ineffective assistance of counsel claim, we need not resolve defendant's alternative argument concerning the standard of good cause required for relief from the waiver provision of *Rule* 3:10–2(c). Further, defendant also argued that his double jeopardy claim should be reviewed as a matter of plain error, a contention rejected by the Appellate Division.

Because we have disposed of this appeal in a manner favorable to defendant on other grounds, we need not decide the question of whether plain error occurred. Nor need we reach the related argument that the pretrial motion requirement of *Rule* 3:10–2(c) results in a forfeiture, not a waiver, of the double jeopardy claim, and that therefore as a forfeited claim it can be raised as plain error. See *United States v. Olano,* 507 *U.S.* 725, 733–34, 113 *S.Ct.* 1770, 1777, 123 *L.Ed.*2d 508, 519 (1993). Nonetheless, in view of the Appellate Division's comments on the issue, we make the following observations.

The question of defendant's entitlement to a plain error review is a difficult one. Although our courts have required adherence to the pretrial motion requirement of *Rule* 3:10–2, when a double jeopardy claim has been raised on appeal the underlying merits of such claims have not escaped judicial attention. For example, in *Currie, supra,* the defendant raised a double jeopardy claim for the first time on appeal and argued that his prior conviction in Municipal Court for the motor vehicle violations of reckless driv-

ing and leaving the scene of an accident barred his subsequent prosecution on the same facts for atrocious assault and battery. 41 *N.J.* at 533–34, 197 *A.*2d 678. Justice Jacobs, writing for the Court in *Currie*, noted that "[t]he applicable court rule provides that the defense of double jeopardy and other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation . . . must be raised by motion before trial[.]" *Id.* at 535, 197 *A.*2d 678. Nonetheless, the Court evaluated the merits of the double jeopardy claim and held that "the State's prosecution of the indictments was not barred by principles of double jeopardy or *res judicata* and collateral estoppel." *Id.* at 545, 197 *A.*2d 678.

*Currie* exemplifies a common approach. Notwithstanding noncompliance with *Rule* 3:10–2(c), our courts have examined the merits of a claim of double jeopardy. *See, e.g., State v. Ebron, supra,* 61 *N.J.* at 217, 294 *A.*2d 1 (observing that defendant failed to present adequate factual basis to support claim that issue finally decided in municipal court was being relitigated in subsequent proceeding); *State v. Cargill,* 312 *N.J.Super.* 13, 17–19, 711 *A.*2d 318 (App.Div.), *certif. denied,* 156 *N.J.* 408, 719 *A.*2d 640 (1998) (rejecting defendant's argument that prior federal conspiracy indictment and conviction barred State's subsequent prosecution; noting defendant's claim not raised prior to trial and therefore waived under *Rule* 3:10–2(c), but nonetheless rejecting claim on merits); *State v. Lane,* 279 *N.J.Super.* 209, 214–15, 652 *A.*2d 724 (App.Div.), *certif. denied,* 141 *N.J.* 94, 660 *A.*2d 1193 (1995) (rejecting double jeopardy claim despite holding that defendant waived claim by failing to comply with *Rule* 3:10–2); *State v. Devlin,* 234 *N.J.Super.* 545, 551–54, 561 *A.*2d 280 (App.Div.), *certif. denied,* 117 *N.J.* 653, 569 *A.*2d 1348 (1989) (noting that defendant waived double jeopardy challenge under *Rule* 3:10–2, but also rejecting merits of claim); *State v. Calvacca,* 199 *N.J.Super.* 434, 438–40, 489 *A.*2d 1199 (App.Div.1985) (finding waiver, but also declaring that defense of double jeopardy would be of no avail); *State v. Tamburro,* 137 *N.J.Super.* 51, 53–54, 347 *A.*2d 796 (App. Div.1975) (citing *Rule* 3:10–2 to reject double jeopardy claim

asserted for first time on appeal, but also citing *Currie* to reach and reject merits of double jeopardy claim); *State v. Soriano*, 107 *N.J.Super.* 286, 289, 258 *A.*2d 140 (App.Div.1968), *aff'd o.b.*, 54 *N.J.* 567, 258 *A.*2d 361 (1969) (noting that defendant failed to raise double jeopardy defense prior to trial on charges of assault and escape conviction, but rejecting defense on merits; finding record inadequate to support claim that defendant's earlier municipal court conviction under disorderly persons statute equated with later charges of assault and escape).

It has been argued that by analyzing the merits of a double jeopardy claim, a form of plain error review is performed. Gabriel J. Chin, *Double Jeopardy Violations as "Plain Error" Under Federal Rule of Criminal Procedure 52(B)*, 21 *Pepp. L.Rev.* 1161, 1210, 1214–15 (1994) (analyzing federal case law and waiver provision of *Fed.R.Crim.P.* 12(b); contending that when courts hold that double jeopardy claim is waived but proceed to review merits nonetheless, plain error review is performed). That commentary notes a formidable number of conflicting federal cases on the question whether plain error review is appropriate. Chin, *supra*, 21 *Pepp. L.Rev.* at 1214–17. Some federal courts have addressed the merits of a defendant's belated double jeopardy claim, despite the assertion of a waiver. *Id.* at 1209–10. *See also United States v. Moore*, 958 *F.*2d 646, 650 (5th Cir.1992) (noting that even though double jeopardy claim was waived, claim was meritless); *United States v. Becker*, 892 *F.*2d 265, 267–68 (3d Cir.1989) (declaring waiver of double jeopardy claim, but reviewing merits nevertheless); *United States v. Thomas*, 875 *F.*2d 559, 562 n. 2 (6th Cir.), *cert. denied*, 493 *U.S.* 867, 110 *S.Ct.* 189, 107 *L.Ed.*2d 144 (1989) (holding that defendant waived double jeopardy challenge, but nonetheless addressing merits); *United States v. Milhim*, 702 *F.*2d 522, 524 (5th Cir.1983) (finding waiver but noting that even without waiver, defendant's double jeopardy argument could not prevail); *United States v. Scott*, 464 *F.*2d 832, 833 (D.C.Cir.1972) (finding that defendant waived double jeopardy claim, but noting that claim would be denied even if properly raised); *Parker v. United States*, 507 *F.*2d 587, 588 (8th Cir.1974),

*cert. denied,* 421 *U.S.* 916, 95 *S.Ct.* 1576, 43 *L.Ed.*2d 782 (1975) (recognizing that personal right in constitutional immunity from double jeopardy can be waived if not pled at trial, but declining to address whether counsel empowered to waive defense without client's knowledge because no double jeopardy rights were offended); *United States v. Reeves,* 293 *F.Supp.* 213, 214 (D.D.C.1968) (recognizing that constitutional immunity from double jeopardy can be waived, but finding that defendant not placed in jeopardy twice).

On the other hand, numerous federal decisions have upheld a waiver of double jeopardy and affirmed a judgment without analyzing the merits of the double jeopardy claim. Chin, 21 *Pepp. L.Rev., supra,* at 1217 n. 345. *See, e.g., United States v. Papadakis,* 802 *F.*2d 618, 621 (2d Cir.1986), *cert. denied,* 479 *U.S.* 1092, 107 *S.Ct.* 1304, 94 *L.Ed.*2d 159 (1987) (holding that defendant waived claim of double jeopardy and refusing to address merits of claim); *United States v. Bascaro,* 742 *F.*2d 1335, 1364–65 (11th Cir.1984), *cert. denied,* 472 *U.S.* 1017, 105 *S.Ct.* 3476, 87 *L.Ed.*2d 613, and *cert. denied,* 472 *U.S.* 1021, 105 *S.Ct.* 3488, 87 *L.Ed.*2d 622 (1985) (same); *United States v. Conley,* 503 *F.*2d 520, 521 (8th Cir.1974) (same). The Appellate Division agreed with the approach taken in the latter cases concerning the appropriateness of engaging in a plain error review after defendant waived his double jeopardy claim because of noncompliance with *Rule* 3:10–2(c). *Allah, supra,* 334 *N.J.Super.* at 525–27, 760 *A.*2d 328.

We regard the question whether a plain error analysis must occur as far from clear. In any event, in this case we do not intend to create a rule that requires review for ineffective assistance of counsel whenever a lawyer does not interpose a double jeopardy defense in accordance with *Rule* 3:10–2. Our holding embraces only the facts of this case, in which defense counsel objected to the grant of a mistrial on grounds that rebutted the basis for declaration of the mistrial, but did not explicitly assert the double jeopardy claim prior to retrial. We limit our relief to that context. Notwithstanding the Court's disposition, *Rule* 3:10–

2 retains vitality. We do not foreclose the possibility that a defendant may waive a double jeopardy claim without implicating Sixth Amendment rights. In future cases involving a retrial following a mistrial, we suggest that the trial court make the waiver of any double jeopardy claim a matter of record to assist in appellate review.

## IV.

The judgment of the Appellate Division is reversed. Defendant's conviction is reversed and his indictment is dismissed. We note that the Appellate Division released defendant on bail pending appeal by Order dated April 11, 2001. The matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.