**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2237-22

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

GEORGE J. SAPPAH and
GRETA J. SAPPAH,

     Defendants-Respondents.

_____

> Argued October 24, 2023 – Decided December 11, 2023
>
> Before Judges Natali and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 21-02-0037.
>
> Anthony James Robinson, First Assistant Prosecutor, argued the cause for appellant (James L. Pfeiffer, Warren County Prosecutor, attorney; Anthony James Robinson, of counsel and on the briefs).
>
> Anthony Joseph Iacullo argued the cause for respondent George J. Sappah (Iacullo Martino & Reinitz, LLC, attorneys; Anthony Joseph Iacullo and Joshua H. Reinitz, of counsel and on the joint brief).

Thomas Paul Fischer argued the cause for respondent Greta J. Sappah (Broscious, Fischer & Zaiter, PC, attorneys; Thomas Paul Fischer, of counsel and on the joint brief).

Matthew Stephen Adams argued the cause for amicus curiae the Association of Criminal Defense Lawyers of New Jersey (Fox Rothschild LLP, attorneys; Matthew Stephen Adams, Marissa Koblitz Kingman, and Daniel B. Cohen, on the brief).

Richard D. Pompelio argued the cause for amicus curiae New Jersey Crime Victims' Law Center (New Jersey Crime Victims' Law Center, attorneys; Richard D. Pompelio and Dyanne Veloz Lluch, of counsel and on the brief).

PER CURIAM

The State appeals from the trial court's March 13, 2023 orders granting a motion for mistrial and dismissing the indictment with prejudice against defendants George J. Sappah and Greta J. Sappah. Although we affirm the court's order for mistrial, we reverse the dismissal of the indictment and remand for further proceedings.

I.

On February 18, 2021, a Warren County grand jury returned an indictment charging George[1] with two counts of first-degree aggravated sexual assault,

---

[1] Because this case involves two co-defendants with the same last name and initials, we identify defendants by their first names. No disrespect is intended.

N.J.S.A. 2C:14-2(a)(1); two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and second-degree prostitution, N.J.S.A. 2C:34-1(b)(7); and charging Greta with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(b); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2); and first-degree prostitution, N.J.S.A. 2C:34-1(b)(4).

During the relevant time period in the indictment, I.M.[2] was eleven years old and lived with other family members in Greta's house, where it is alleged she and George sexually assaulted I.M. on more than one occasion. George is I.M.'s great-uncle and Greta is I.M.'s grandmother.

The first assistant county prosecutor represented the State during the jury trial. Defendants' theory of the case, as submitted to the jury during their opening statements, was that I.M. fabricated the assaults and her testimony was uncorroborated.

I.M. testified that the assaults all occurred in a similar manner. Greta went to I.M.'s bedroom upstairs and called her name from the door. I.M. "kn[e]w

---

[2] Initials are used to protect the privacy of the child. R. 1:38-3(c)(12).

what [she] ha[d] to do," and followed Greta into her bedroom downstairs, where George waited. Defendants closed the door, told I.M. to "shut up" and George took off I.M.'s pants. George then took off his clothes and put his penis inside I.M.'s vagina and mouth.

During the assaults, defendants threatened to hurt I.M.'s family if she said anything. Greta stood in the room and "constantly t[old] [I.M. she's] . . . ugly and . . . fat and [she] wasn't worth anything." Greta pointed a gun at I.M. and hit her head and arms with it. Defendants also used a "horse whip" to hit I.M.'s arms and legs. I.M. referred to another weapon used during the assault as "this thing that they sometimes shot me with" that would make her "fall back to sleep."

In presenting its case for the prostitution charges, the State elicited testimony from I.M. that after the assaults, George gave Greta money in envelopes she kept in her bedroom dresser and car, and that I.M. saw the envelopes of money in those locations. After the conclusion of I.M.'s testimony, the State called I.M.'s mother, A.M., who testified she also saw white envelopes filled with cash in Greta's car. A.M. testified Greta told her she had taken the cash out of her home equity line of credit.

A-2237-22

Following A.M.'s testimony, defendants requested a sidebar and alerted the court they were not aware of A.M.'s testimony about the envelopes and home equity line of credit, details not contained in her earlier statement to law enforcement. The first assistant acknowledged he learned of the new information the previous night, when he conducted a more "comprehensive witness-preparatory conversation" by phone, without an investigator on the call. Although the new information proffered by A.M. was not previously known to defendants, the first assistant did not provide an updated report of the new information nor did he alert either defense counsel of his conversation with A.M. prior to her testimony. Accordingly, defendants moved for a mistrial.

After considering argument outside the presence of the jury, the court determined the State had committed a discovery violation under Brady v. Maryland, 373 U.S. 83 (1963). The court found "the State elicited testimony regarding envelopes filled with cash, even confirming the victim's testimony about the glove compartment, information that was never contained in any earlier statement." Noting A.M.'s disclosure of the envelopes occurred for the first time "on the eve of trial," the court continued:

> [M]uch like in the last Sappah trial less than three
> months ago, the State made a conscious decision not to
> disclose this new information, calling it tangentially

corroborative.[3]   The State made this decision despite knowing that the defendant's theory of the case was . . . there was nothing corroborating the victim's story.

. . . .

[T]here could be no doubt that the evidence was purposely not disclosed, rather suppressed, for the sole purpose of presenting corroborative testimony which was directly relevant to an element of the prostitution charges, specifically, but also clearly bolstering the credibility of the victim.

The trial court concluded the State had committed a Brady violation:

One, the information is favorable to the accused in the form of impeachment evidence; two, it was clearly purposely suppressed; three, material to defendant's case, it directly affects the victim's credibility, specifically related to the element of the crime.  It clearly also had a negative effect on the defendant's trial preparation, their opening statements and their examination of witnesses by not knowing this prior to beginning trial.

The court next determined the appropriate remedy.  The State requested the court provide a curative instruction to the jury to disregard the prior undisclosed testimony or, in the alternative, dismiss the prostitution charges. The defendants requested a mistrial and dismissal of all charges with prejudice.

---

[3]  The same judge presided over a prior trial against George, which involved a different victim and charges, wherein the same first assistant prosecutor withheld evidence in the same fashion, resulting in a mistrial.

The court dismissed the entire indictment with prejudice as to both defendants, reasoning "in the context of a <u>Brady</u> violation, the remedy of dismissal of an indictment with prejudice is utilized when the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." The court found it was the State's "tactical decision to give [it] an advantage to tip the scales of justice in the State's favor in a case that solely relies on the credibility and believability of the sole witness with direct knowledge of anything that may have occurred." The court further stated the first assistant prosecutor should have known that "knowingly failing to disclose new information discovered on the eve of trial to defense could only foster [a mistrial]."

Although the court did not take into account the nature of the charges and the harm to the victim if they were dismissed, it considered defendants' interests:

> [I]f the court granted a mistrial without prejudice, it would serve a manifest injustice to at least George Sappah, who would have to prepare now for a third and fourth trial due to the State's violation and through no fault of his own because all of the charges stem from the same conduct for both defendants.

This appeal follows.

## II.

The State raises the following issues for our consideration:

POINT I

MISTRIALS ARE DISFAVORED BY THE LAW AND THE TRIAL COURT'S DISCRETION TO DECLARE A MISTRIAL WAS IMPROPERLY EXERCISED BECAUSE AN APPROPRIATE, ALTERNATIVE REMEDY EXISTED.

POINT II

THE STATE DID NOT DELIBERATELY PROVOKE DEFENDANT'S MISTRIAL MOTION.

We begin our analysis with the standard of review applicable to decisions within the trial court's discretion.  "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).  After examining a trial court's exercise of discretionary authority, an appellate court will reverse only if the "exercise of discretion was 'manifestly unjust' under the circumstances."  Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v.

Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A trial court's determination as to whether evidence is subject to disclosure under Brady presents a mixed question of law and fact. State v. Marshall, 148 N.J. 89, 185 (1997). For mixed questions of law and fact, appellate courts give deference to the trial court's supported factual findings, but review de novo the court's application of legal rules to the factual findings. State v. Pierre, 223 N.J. 560, 577 (2015).

We first address whether the court erred in determining that the State's failure to provide defendants an updated report of A.M.'s changed statement constituted a Brady violation. A Brady violation occurs when: (1) the evidence at issue was favorable to the accused, either as exculpatory or impeachment evidence; (2) the State either purposely or inadvertently suppressed the evidence; and (3) the evidence was material to the defendant's case. State v. Brown, 236 N.J. 497, 518 (2019).

In deciding materiality, the court must "examine the circumstances under which the nondisclosure arose" and "[t]he significance of a nondisclosure in the context of the entire record." State v. Marshall, 123 N.J. 1, 199-200 (1991). Determining the effect of the withheld evidence in the context of the entire

record requires the court to "consider the strength of the State's case, the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld evidence's admissibility." Brown, 236 N.J. at 519. Evidence is material if there is a "reasonable probability" that timely production of the withheld evidence would have led to a different result at trial. United States v. Bagley, 473 U.S. 667, 682 (1985).

Here, there can be no doubt the first assistant's withholding of the new information constituted a Brady violation. First, A.M.'s statement, although proffered by the State to corroborate I.M.'s testimony and thus bolster its case against defendants, was also favorable to defendants as impeachment evidence because it offered an alternative explanation for the source of the money. Second, the first assistant's withholding the evidence was purposeful, since he obtained the statement the night before trial and failed to disclose the information prior to eliciting the testimony before the jury. And third, the evidence was material to defendants' case not just by offering a legitimate source of the money but because defendants had formulated their trial strategy around the lack of corroboration of I.M.'s testimony, to their detriment when the State then proffered A.M.'s statement that she had also seen the envelopes.

We then turn to the judge's decision to declare a mistrial, which is addressed to the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Smith, 224 N.J. 36, 47 (2016); State v. Jackson, 211 N.J. 394, 407 (2012); McKenney v. Jersey City Med. Ctr., 167 N.J. 359, 376 (2001). "The grant of a mistrial is an extraordinary remedy to be exercised only when necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). "[A]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." Jackson, 211 N.J. at 407 (quoting Harvey, 151 N.J. at 205).

"Of course, declaring a mistrial is never a preferred course." State v. Smith, 471 N.J. Super. 548, 579 (App. Div. 2022). "If there is 'an appropriate alternative course of action,' a mistrial is not a proper exercise of discretion." Smith, 224 N.J. at 47 (quoting State v. Allah, 170 N.J. 269, 281 (2002)). "For example, a curative instruction, a short adjournment or continuance, or some other remedy, may provide a viable alternative to a mistrial, depending on the facts of the case." Ibid.

Here, the court correctly determined that the State's error could not be remedied by a curative instruction or adjournment. A.M.'s corroborative testimony that she had seen envelopes of money was not just new information for which defendants needed additional time to investigate, and dismissing the prostitution charge was likewise insufficient to cure the harm at trial. The State's case rested squarely on I.M.'s testimony; defendants' trial strategy as articulated in its opening statement was centered on I.M.'s credibility and, importantly, the lack of corroborative evidence. Curative jury instructions to disregard A.M.'s testimony and to reiterate that opening statements are not testimony would not have ensured the jurors were insulated from the prejudicial effect of the improper statement. Because the testimony irrevocably unraveled defendants' trial strategy, the trial judge correctly determined a mistrial was the only remedy and we affirm that order.

We lastly address the judge's dismissal of the indictment against both defendants. "A decision to dismiss an indictment is generally left to the sound discretion of the trial court and is reviewed only for abuse of discretion." State v. Zadroga, 255 N.J. 114, 131 (2023) (citing State v. Twiggs, 233 N.J. 513, 544 (2018)). The trial court's discretion "must be informed and guided by considerations of fundamental fairness, as well as the judiciary's responsibility

12

for the proper overall administration of the criminal justice system." State v. Abbati, 99 N.J. 418, 429 (1985).

"[A] trial court must dismiss an indictment if prosecution would violate the defendant's constitutional rights." Abbati, 99 N.J. at 425. "[I]n the context of a Brady violation, the remedy of dismissal of an indictment with prejudice is utilized when the 'conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoke judicial processes to obtain a conviction.'" Brown, 236 N.J. at 528 (quoting United States v. Russell, 411 U.S. 423, 431-32 (1973)).

Dismissal of an indictment due to a discovery violation is a "last resort because the public interest, the rights of victims, and the integrity of the criminal justice system are at stake." State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2003). The rights of a victim include a trial court's balancing the harm to a victim against those to a defendant and considering fairness and respect for the victim. State v. Timmendequas, 161 N.J. 515, 556 (1999).

The New Jersey Constitution ensures victims have the right "to be treated with fairness, compassion, and respect by the criminal justice system." N.J. Const. art. I, § 22. Under the Crime Victims' Bill of Rights, crime victims have the right "[t]o be treated with dignity and compassion by the criminal justice

13

system," N.J.S.A. 52:4B-36(a); the right "[t]o be informed about the criminal justice process," id. at (b); the right "[t]o be informed about available remedies," id. at (h); and the right "[t]o be advised of case progress," id. at (k). Victims also have the right to appear for a proceeding implicating their rights and have standing to file a motion or present argument on a motion filed, and to receive an adjudicated decision by the court on any such motion. Id. at (r).

Here, I.M. reported her grandmother and great-uncle had sexually assaulted her when she was eleven years old, egregious crimes for which defendants faced life sentences. It is unclear from the record before us whether I.M. was aware of the motion for mistrial and her right to participate in it. What the record reflects, however, is that the court reached its conclusion by considering the misconduct of the prosecutor and the harm to George, to the exclusion of I.M.'s rights as a victim. Particularly because a victim's rights are of constitutional dimension in New Jersey, the court's failure to consider those interests constitutes an abuse of discretion.

We also are troubled by the weight given by the court to the first assistant's actions in a different matter involving George to support the dismissal of the entire indictment as to both defendants in this matter. While the first assistant's failure to disclose the statement constituted a Brady violation in this case, the

14

conduct was not "so outrageous" as to "absolutely bar" the prosecution of the case. Cf. Russell, 411 U.S. at 431-32 (undercover detective's providing defendant an essential ingredient to manufacture methamphetamine does not constitute "outrageous" conduct necessitating dismissal of the indictment with prejudice). There also is no indication in the record that the State intentionally engaged in misconduct to procure a mistrial, in which case a dismissal with prejudice may be warranted. See Oregon v. Kennedy, 456 U.S. 667 (1982) (prosecutor's calling defendant a "crook" resulted in mistrial but was not intended to provoke defendant into seeking mistrial). Moreover, the dismissal of Greta's indictment is puzzling because she was not a defendant in the other matter, and the court's finding of a "manifest injustice" was only as to George. Therefore, we will reverse the trial court's decision and order the indictment reinstated against defendants.

One final note. While the concerns set forth require us to reverse the court's decision and reinstate the indictment, our opinion should not be read to condone or mitigate the State's failure to disclose discovery to defense counsel. This intentional conduct squandered the time and resources of the court, counsel and jury. We trust that on remand, the State will ensure the fair and efficient administration of justice in this matter.

15

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2237-22