211 N.J. Super. 590 (1986)
512 A.2d 525
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SUNG J. LEE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1986.
Decided June 30, 1986.
*592 Before Judges KING, O'BRIEN and SIMPSON.
Michael D. Miller argued the cause for appellant.
Jay Hindman, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
Defendant contends the State's use of the victim and complaining witness, Lee Kim, as an interpreter at one of the grand jury sessions requires that the guilty verdict be set aside and the indictment dismissed even though he did not move to dismiss the indictment on this ground until after the guilty verdict was returned.
On January 9 and 23, 1985 the Camden County Grand Jury considered several charges brought against defendant based on an incident that occurred on November 3, 1984. At the January 9 grand jury session, Lee Kim (the victim, complaining witness and defendant's sister), testified. Two other witnesses, Detective Joseph Rubino and Ok Kyu Kim, an alleged eyewitness had been subpoenaed, but were not present on that date. The prosecutor said that the detective had called in sick and simply noted that Ok Kyu Kim "isn't here." At the end of the January 9 session the prosecutor said the matter would be continued so the grand jury could hear the testimony of Rubino and Ok Kyu Kim.
On January 23, 1985 the grand jury met again; Rubino and Ok Kyu Kim were present. Lee Kim, the victim and complaining witness, was also present. The prosecutor advised the grand jury that she had asked Lee Kim "to come back again and interpret" for Ok Kyu Kim "because we didn't know where *593 to find a Korean interpreter." Lee Kim was then sworn to interpret truthfully the questions to and answers of Ok Kyu Kim, following which Ok Kyu Kim testified.
On January 23, 1985, the grand jury returned a three-count indictment against defendant which charged him with aggravated assault  pointing a firearm contrary to N.J.S.A. 2C:12-1b(4) (count one), possession of a weapon for an unlawful purpose contrary to N.J.S.A. 2C:39-4 (count two), and terroristic threats contrary to N.J.S.A. 2C:12-3 (count three). Defendant pled not guilty to all counts.
On May 9, 1985 a bench trial was conducted before Judge Rossetti. A Korean interpreter was present for use by defendant and other Korean-speaking witnesses. The judge found defendant guilty on all three counts.
On May 30, 1985 defendant filed a motion demanding that the "indictment and conviction be dismissed and vacated." In his accompanying certification, defendant's trial attorney[1] stated
2. During the trial on May 9, 1985, I was advised by my adversary, Donna Sears, that the complaining witness was used as an interpreter for the State's witness during the grand jury proceeding.
3. At no time during the grand jury proceeding did anyone question Ms. Kim as to her obvious interest in the outcome of the case on her bias towards the defendant....
Defendant's trial counsel asked Judge Rossetti to grant the motion for a new trial pursuant to R. 3:20-1 notwithstanding his failure to object previously, because of the injustice inherent in having the complaining witness serve as the only eye witness' interpreter before the grand jury.
On June 14, 1985 Judge Rossetti denied this motion and sentenced defendant as follows: count two  a term of five years with no parole eligibility for three years; count three  a term of three years to run concurrently with the term under count two, and count one  18 months with no parole eligibility for 18 months, to run concurrently with the term under count *594 two. The judge also imposed a $75 Violent Crimes Compensation Board penalty.

I
Defendant requests that we set aside the verdict and dismiss the indictment, leaving the State free to properly reindict him. R. 3:6-6(a) states that no person other than the grand jurors, the prosecutor, the grand jury clerk, the stenographer, "the witness under examination" and "interpreters when needed" may be present while the grand jury is in session. Since Lee Kim completed her grand jury testimony at the January 9, 1985 session, she was an unauthorized person at the January 23, 1985 session unless she was properly there as an interpreter for Ok Kyu Kim.
In general, an interpreter "should never be appointed unless necessary to the conduct of the case." State in Interest of R.R., 79 N.J. 97, 116 (1979) (emphasis in original). Any interpreter selected should ordinarily be an individual who has "no interest in the outcome." Id. at 118. Of course, no matter how "disinterested" an interpreter might be, there always exists the possibility that the interpreter will inadvertently distort the message communicated by the witness. When the interpreter has an interest in the proceeding this risk is magnified. While it may occasionally be necessary to appoint an "interested" interpreter, such person should not be utilized unless "no disinterested person is available who can adequately translate the primary witnesses testimony." Ibid. See generally New Jersey Supreme Court Task Force on Interpreter and Translation Services, 116 N.J.L.J. 385 (1985).
While acknowledging that Lee Kim acted as Ok Kyu Kim's interpreter before the grand jury, the State contends defendant was not prejudiced since Ok Kyu Kim's testimony was not crucial to the grand jury's return of a true bill, but was "merely cumulative at best." Defendant correctly notes that aside from the prosecutor's comment at the beginning of the January 23, *595 1985 grand jury session there is nothing in the record to substantiate the State's representation that "no other Korean interpreters could be located." The prosecutor had two weeks between grand jury sessions to retain the services of a disinterested interpreter. Defendant is probably correct in noting how unlikely it is that the prosecutor would have been unable to locate a Korean interpreter in all of the Philadelphia metropolitan area, of which Camden County is a part. This observation is bolstered by the fact that a neutral interpreter was indeed secured for the trial.
As for the State's claim that Ok Kyu Kim's testimony was merely cumulative, the State overlooks that, aside from Ok Kyu Kim, only two other witnesses testified before the grand jury. One was Lee Kim who, naturally, was present on November 3, 1984 when defendant allegedly threatened to kill her with a gun while both were in Lee Kim's store. The other witness was Detective Rubino, who did not see the incident. Ok Kyu Kim testified that she was present in the store when defendant pulled out a gun and threatened to kill Lee Kim. The State cannot legitimately dismiss Ok Kyu Kim's grand jury testimony as merely cumulative "window dressing."
Obviously, as the victim and complaining witness, Lee Kim was a person with an interest in the outcome of the grand jury's proceedings against defendant. The State should not have used her as an interpreter at the January 23, 1985 grand jury session; she should not even have been present at that session. The State's error in using Lee Kim as an interpreter was compounded by its failure to make any discernible attempt to demonstrate on January 23, 1985 that no disinterested person was available to translate for Ok Kyu Kim.
But this obvious defect in the grand jury proceedings is of no avail to defendant because he, or more accurately his trial attorney, failed to timely object. As the State notes, defendant's post-trial objections to the indictment are defeated by R. 3:10-2, which provides (1) that defenses or objections based on *596 defects in the indictment "must be raised before trial" and, (2) that the failure to raise them before trial "constitutes a waiver thereof."
Defendant suggests that the trial judge must grant a motion to dismiss a constitutionally defective indictment. We disagree. The Supreme Court has held that the failure to timely assert defenses or objections based on defects in the indictment may constitute a waiver under R. 3:10-2, even if "constitutional rights" (emphasis added) are involved. State v. Del Fino, 100 N.J. 154, 160 (1985). As the Court earlier observed in State v. McKnight, 52 N.J. 35 (1968), in criminal matters, the Supreme Court has promulgated "rules within which a defendant must assert his rights, even though they be of constitutional origin." Id. at 48. In short, there are court rules because "there must be order in the judicial process" and, as a consequence of such court rules, "constitutional rights may be lost if they are not advanced in accordance with rules which afford a fair opportunity to press them." Ibid.
Of course, R. 3:10-2 specifically grants the trial judge discretion to grant relief from the waiver implied from the failure to object by motion before trial, but only "for good cause shown." What constitutes good cause "for delay" in asserting the defense or objection to the indictment depends upon the circumstances. Del Fino, 100 N.J. at 160. Moreover, the merits of the underlying assertion "must be persuasive if an untimely challenge is to be otherwise allowed for good cause." Id. at 161.
Defendant concedes that at no time before or during the trial did his trial attorney make a motion to dismiss the indictment because of Lee Kim's interpretive activities before the grand jury. Defendant's appellate attorney argues, based on the post-trial certification of defendant's trial attorney, that trial counsel became aware of the use of the alleged victim as an interpreter only during trial when he was so advised by the assistant prosecutor.
*597 This may not be factually accurate. Obviously, trial counsel read at least the transcript of the January 9, 1985 grand jury session before the May 9, 1985 trial because he referred to it on Lee Kim's cross-examination. Since the transcript of the testimony offered to the grand jury on two separate days in January 1985 comes to us in a single volume with a single court stenographer's certification and is described for the second day as a "continuing transcript," we can fairly assume that both days' testimony was available to and read by defendant's trial counsel. Also, in his post-trial certification, counsel did not state that he was unaware before the trial of the State's use of Lee Kim as an interpreter at the January 23, 1985 grand jury session. Rather, he simply stated that, "[d]uring the trial on May 9, 1985, I was advised by my adversary ... that the complaining witness was used as an interpreter for the State's witness during the grand jury proceeding." Conspicuous by its absence is any statement by counsel that, before being so advised during the trial, he was not aware of the State's use of Lee Kim as an interpreter before the grand jury. Apparently, this is the reason that defendant's appellate attorney cautiously suggests that, "[p]rior to trial, it can only be assumed that defense counsel either did not read the Grand Jury transcript or read it and was not familiar with the Constitution and the Court Rules and was, therefore, unaware of its implications."
Even if defendant's trial attorney did not read the January 23, 1985 grand jury transcript, that still is no good excuse for counsel's failure to move to dismiss the indictment before the trial. As the State notes, transcripts of grand jury proceedings are discoverable prior to trial. R. 3:13-3(a)(3). Finally, as defendant himself admits, once his trial attorney was advised during the trial of Lee Kim's grand jury activities there was "no explanation or excuse" for not moving for the dismissal of the indictment immediately, instead of waiting until after the trial and after defendant was found guilty. In short, as the State correctly claims, "defendant has not and indeed cannot *598 make a showing of good cause for the delay in challenging the indictment."
Even if defendant could show good cause for his delay in not asserting his challenge to the indictment until after being found guilty, the merits of this assertion "must be persuasive." Del Fino, 100 N.J. at 161. Defendant's analytical contention here is frustrated by the United States Supreme Court's recent decision in United States v. Mechanik, ___ U.S. ___, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). In Mechanik, a grand jury returned an indictment charging defendants with drug-related offenses and conspiracy. The grand jury then returned a superseding indictment in which the conspiracy charge was expanded. In support of this indictment, the United States Attorney presented the testimony of two law enforcement agents who were sworn together and questioned in tandem before the grand jury. Federal Rule of Criminal Procedure 6(d) states that only specified persons including "the witness under examination" may be present during a grand jury proceeding. See R. 3:6-6(a).
Defendants' trial began in February 1980 and ended in July 1980. During the second week of the trial, the fact that the two agents had testified in tandem first became known to defendants when the Government furnished them with a portion of the grand jury transcript. Defendants moved for dismissal of the indictment on the ground that the simultaneous presence of the two agents violated Rule 6(d). The trial judge took the motion "under advisement until the conclusion of trial." After the jury returned a guilty verdict, the trial judge denied defendants' motion for dismissal of the indictment.
The Supreme Court noted (1) that defendants had been reasonably diligent before trial in attempting to discover any error during the grand jury proceedings, and (2) that there was no suggestion in the record that the Government designedly withheld any information. The Court said it would assume for the sake of argument that the simultaneous presence and testimony of the two agents before the grand jury violated Rule 6(d) *599 and therefore that the trial judge would have been justified in dismissing portions of the indictment on that basis "had there been prejudice and had the matter been called to its attention before the commencement of the trial." Id. at ___-___, 106 S.Ct. at 940-941, 89 L.Ed.2d at 55-56. But the Court held that the "supervening" guilty verdict made any reversal of the conviction and dismissal of the indictment "inappropriate." Id. at ___, 106 S.Ct. at 941, 89 L.Ed.2d at 56.
... The Rule [i.e., 6(d)] protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty. The error involving Rule 6(d) in these cases had the theoretical potention to affect the grand jury's determination whether to indict these particular defendants for the offenses with which they were charged. But the petit jury's subsequent guilty verdict not only means that there was probable cause to believe that the defendants were guilty as charged, but that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.
... [T]here is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been dismissed before trial. He will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him. In courtroom proceedings as elsewhere, "the moving finger writes, and having writ moves on." Thus reversal of a conviction after a trial free from reversible error cannot restore to the defendant whatever benefit might have accrued to him from a trial on an indictment returned in conformity with Rule 6(d). [___ U.S. at ___-___, 106 S.Ct. at 941-942, 89 L.Ed.2d at 56-57].
In summary, in the case of "any error in the grand jury proceeding connected with the charging decision," the United States Supreme Court held that a guilty verdict "rendered harmless" any such error. Id at ___, 106 S.Ct. at 941-944, 89 L.Ed.2d at 56-58. See State v. Wilshire, ___ R.I. ___, 509 A.2d 444 (1986) (grand jury irregularity rendered harmless error by conviction).
In Del Fino, supra, the New Jersey Supreme Court held that the merits of the defendant's underlying assertion against the grand jury indictment "must be persuasive" if an untimely challenge can be otherwise allowed for good cause. 100 N.J. at 161. In Mechanik, the United States Supreme Court held that an error in the grand jury proceeding connected with the *600 charging decision is rendered harmless by a supervening guilty verdict. ___ U.S. at ___-___, 106 S.Ct. at 941-944, 89 L.Ed.2d at 56-58. We conclude here that the lack of timeliness of defendant's motion in the case before us rendered the error "harmless" and his contentions not "persuasive" in the DelFino context. Defendant was found guilty beyond a reasonable doubt in a presumably error-free trial. At least he makes no claim of trial error to us. We find any error in the process of charging by indictment harmless beyond a reasonable doubt.

II
Defendant next contends that his trial attorney's failure to file a motion to dismiss the indictment based on Lee Kim's grand jury activities "prior to or during the course of the trial amounted to ineffective assistance of counsel."
In State v. Childs, 204 N.J. Super. 639, 645 (App.Div. 1985), this court observed that the standard for determining the effective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the United States Supreme Court noted there was a strong presumption that a counsel's conduct falls within the wide range of reasonable professional conduct. 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. To overcome this presumption a defendant (1) must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, and (2) must show that there is a reasonable probability that, but for the counsel's unprofessional errors, "the result of the proceeding would have been different." Id. at 689, 694, 106 S.Ct. at 2066, 2068, 80 L.Ed.2d at 695, 698. Thus, there is a general requirement that the defendant affirmatively prove prejudice. Id. at 692, 106 S.Ct. at 2067, 80 L.Ed.2d at 697.
However, in Strickland the Court also stated that the purpose of the constitutional requirement of effective assistance of counsel was to ensure "a fair trial." 466 U.S. at 685, 104 S.Ct. *601 at 2063, 80 L.Ed.2d at 692. Thus, the benchmark for judging "any claim of ineffectiveness" must be whether counsel's conduct so undermined the proper functioning of the adversial process "that the trial cannot be relied on as having produced a just result." Id. at 685-688, 106 S.Ct. at 2063-2065, 80 L.Ed.2d at 692-693. The defendant is required to make a showing that the counsel's errors were so serious "as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, 106 S.Ct. at 2064, 80 L.Ed.2d at 693, because the purpose of the effective-assistance-of-counsel guarantee of the Sixth Amendment is "simply to ensure that criminal defendants receive a fair trial." Id. at 689, 106 S.Ct. at 2065, 80 L.Ed.2d at 694.
Consequently, when a defendant challenges his conviction on the grounds of ineffectiveness of counsel, the question is whether there is a reasonable probability that, absent the errors of counsel, "the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 106 S.Ct. at 2069, 80 L.Ed. 2d at 698. Any error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding "if the error had no effect on the judgment." Id. at 691, 106 S.Ct. at 2067, 80 L.Ed.2d at 696.
The State asserts that defendant's contention of ineffective assistance of counsel is "patently meritless", because defendant has failed to show or even allege that he was "denied a fair trial" as a result of the failure of his trial attorney to file a motion to dismiss the indictment before or during the trial.
As far as we can tell, the May 9, 1985 trial was free from reversible error. Defendant does not contend otherwise. Nor does he contend that the error in the January 23, 1985 grand jury proceeding had any adverse effect on the outcome of the May 9, 1985 trial.
Defendant merely contends that, if his trial attorney had "timely" filed a motion to dismiss the indictment, Judge Rossetti "would certainly have dismissed the Indictment." He does not contend that he would not have been reindicted or again *602 convicted. But in Mechanik the United States Supreme Court assumed that the trial judge would have dismissed the indictment there, "had the matter been called to its attention before the commencement of the trial." ___ U.S. at ___-___, 106 S.Ct. at 940-941, 89 L.Ed.2d at 55-56. However, since the error in the indictment "had no effect on the outcome of the trial," the Supreme Court ruled that the guilty verdict, "after a trial free from reversible error," rendered harmless the error in the indictment. Id. at ___-___, 106 S.Ct. at 941-944, 89 L.Ed.2d at 56-58.
Since the alleged errors of his trial attorney could have had no adverse effect on the conduct of the trial itself or its outcome, we see no merit to defendant's contention regarding ineffective assistance of counsel.
Affirmed.
NOTES
[1] Defendant's present appellate counsel was not his trial attorney.