**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2505-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RASHON BARKLEY, a/k/a
RASHAUN BARKLEY,
ARMED R. BARKLEY, and
LAMONT CARTER,

    Defendant-Appellant.

---

Argued October 31, 2023 – Decided November 16, 2023

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Essex County, Law Division, Indictment No. 93-04-1390.

Peter T. Blum argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, Assistant Deputy Public Defender, of counsel and on the briefs).

Hannah F. Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause

for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Hannah F. Kurt, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

A jury convicted defendant Rashon Barkley of conspiracy, felony murder, aggravated manslaughter, five counts of robbery, theft, simple assault, and weapons offenses for his participation in four violent robberies during the late night of January 15, 1993, into the early morning hours of the next day. The incidents occurred in Newark, East Orange, and Irvington – and left one person dead. Born in February 1974, defendant was a few weeks shy of his nineteenth birthday at the time of the incidents. He was sentenced to an aggregate prison term of life plus fifty years without parole. We affirmed defendant's convictions and sentence in an unpublished opinion. State v. Barkley, No. A-0467-94 (App. Div. Feb. 10, 1997). Thereafter, defendant filed a litany of post-conviction relief (PCR) applications in state and federal court, all of which were denied by the courts and affirmed on appeal.[1]

---

[1] See State v. Barkley, No. A-0657-99 (App. Div. Feb. 7, 2001) (affirming denial of defendant's first PCR petition); State v. Barkley, No. A-2464-05 (App. Div. Aug. 26, 2008) (affirming denial of defendant's second PCR petition); State v. Barkley, No. A-5508-11 (App. Div. Feb. 25, 2013) (affirming denial of

In March 2021, defendant filed a pro se motion seeking resentencing under mitigating factor fourteen, permitting a sentencing court to consider "defendant was under 26 years of age at the time of the commission of the offense," N.J.S.A. 2C:44-1(b)(14), enacted in October 2020. On April 21, 2021, the motion judge issued an order denying defendant's motion and an accompanying statement of reasons finding the legislative intent of the statute demonstrated the mitigating factor applies prospectively.

Thereafter, defendant was assigned counsel, who moved for reconsideration of the April 21, 2021 order and sought resentencing on two additional bases: (1) his sentence for first-degree robbery on count three was illegal because the grand jury indicted him for second-degree robbery; and (2) as an eighteen-year-old offender, he "should have been tried and sentenced as a juvenile." On March 28, 2022, the same judge issued an order accompanied by another cogent statement of reasons, denying all claims for relief without an

defendant's third PCR petition); State v. Barkley, No. A-4257-14 (App. Div. Oct. 12, 2016) (affirming denial of defendant's fourth PCR petition); State v. Barkley, No. A-4205-16 (App. Div. Mar. 6, 2018) (affirming denial of defendant's fifth PCR petition). Defendant also unsuccessfully sought habeas corpus relief in the federal district and circuit courts, culminating in two successive denials of certiorari by the United States Supreme Court. See Barkley v. Glover, 562 U.S. 1114 (2010); Barkley v. Ortiz, 565 U.S. 1214 (2012).

evidentiary hearing. See R. 3:21-10(c) (providing a hearing "need not be conducted" on a motion for a change of sentence unless the court determines "a hearing is required in the interest of justice").

In his counseled brief, defendant raises the following points for our consideration[2]:

POINT I

A RESENTENCING SHOULD OCCUR BECAUSE THE LANDMARK COMER[3] DECISION – WHICH ENTITLES JUVENILE OFFENDERS TO A RESENTENCING AFTER TWENTY YEARS – SHOULD EXTEND TO EIGHTEEN-YEAR-OLD OFFENDERS LIKE DEFENDANT BARKLEY, WHO SHARE THE SAME CHARACTERISTICS AS JUVENILES. U.S. CONST. AMEND. VIII, XIV; N.J. CONST. ART. I, ¶ 12.

POINT II

A RESENTENCING SHOULD OCCUR BECAUSE THE SENTENCE FOR FIRST-DEGREE ROBBERY ON COUNT [THREE] WAS ILLEGAL WHERE THE

---

[2] Defendant did not reprise his mitigating factor fourteen argument. In June 2022 – after the court's decision and before defendant filed his merits brief, the Supreme Court decided State v. Lane, holding mitigating factor fourteen applies "prospectively to defendants sentenced on or after its effective date of October 19, 2020." 251 N.J. 84, 97 (2022). The factor also applies on resentencing "for reasons unrelated to mitigating factor fourteen." Id. at 97 n.3.

[3] State v. Comer, 249 N.J. 359 (2022).

GRAND JURORS INDICTED FOR SECOND-DEGREE ROBBERY. N.J. CONST. ART. I, ¶ 8.

In his pro se supplemental brief, defendant raises an additional point:

THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE THE TRIAL COURT DID NOT EXPLICITLY FIND THAT THE AGGREGATE SENTENCE WAS FAIR, NOR DID IT CONSIDER DEFENDANT'S AGE IN IMPOSING A CONSECUTIVE SENTENCE, REQUIRED BY STATE V. TORRES, 246 N.J. 246 (2021). (Not raised below)

We reject defendant's contentions and affirm.

Well-settled principles guide our review. "[A]n illegal sentence is one that 'exceeds the maximum penalty . . . for a particular offense' or a sentence 'not imposed in accordance with law.'" State v. Acevedo, 205 N.J. 40, 45 (2011) (quoting State v. Murray, 162 N.J. 240, 247 (2000)). "That includes a sentence 'imposed without regard to some constitutional safeguard.'" State v. Zuber, 227 N.J. 422, 437 (2017) (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)). There is no temporal limit on a court's ability to review an illegal sentence; it "can be corrected 'at any time.'" Acevedo, 205 N.J. at 47 n.4 (quoting R. 3:21-10(b)(5); R. 3:22-12). "We review the legality of a sentence de novo." State v. Steingraber, 465 N.J. Super. 322, 327 (App. Div. 2020).

The crux of defendant's constitutional argument, raised in his first point, is that he is entitled to "immediate resentencing" pursuant to the Supreme Court's decision in Comer because, as an eighteen-year-old offender, he shared the same "diminished culpability" and "likelihood of reform" that the Court found appliable to juvenile offenders. See 249 N.J. at 370. Alternatively, defendant argues a remand is necessary for the motion judge "to consider expert testimony on the developmental science, and to decide if the Comer lookback should extend to eighteen-year-olds."

In Comer, the Court created a procedure for juvenile offenders – prosecuted as adults and sentenced to the murder statute's mandatory thirty-year parole bar – to seek a hearing after serving at least twenty years in prison. Ibid. Under those discrete circumstances, on resentencing, the court must assess the "series of factors the United States Supreme Court set forth in Miller v. Alabama which are designed to consider the 'mitigating qualities of youth.'" Ibid. (quoting Miller, 567 U.S. 460, 476-78 (2012)). The court should also consider "whether the juvenile offender still fails to appreciate risks and consequences;" "whether [the juvenile offender] has matured or been rehabilitated;" and "the juvenile offender's behavior in prison since the time of the offense." Comer, 249 N.J. at 370; see also Zuber, 277 N.J. at 446-47 (extending the protections

espoused in <u>Miller</u> to juvenile offenders sentenced to a term that is "the practical equivalent of life without parole").

Defendant acknowledges the juvenile offender in <u>Comer</u> was seventeen years old, <u>Comer</u>, 249 N.J. at 371, and the juvenile offender in the companion case, <u>State v. Zarate</u>, was fourteen years old, <u>id.</u> at 374, when they committed murder.  Nonetheless, he argues the Court relied on articles about brain science that explain why many youths do not reach maturity until years after they turn eighteen and, as such, that science is applicable here.

We decline defendant's invitation to extend the holding in <u>Comer</u> for two reasons.  Initially, the Court's decision was limited to juvenile offenders tried and convicted of murder in adult court; the Court did not extend this right of sentence review to offenders who were eighteen years of age or older when they committed their crimes.  Notably, in <u>State v. Ryan</u>, decided one month after its decision in <u>Comer</u>, the Court stated:  "The Legislature has chosen eighteen as the threshold age for adulthood in criminal sentencing.  Although this choice may seem arbitrary, 'a line must be drawn,' and '[t]he age of [eighteen] is the point where society draws the line for many purposes between childhood and adulthood.'"  249 N.J. 581, 600 n.10 (2022) (alterations in original) (quoting

Roper v. Simmons, 543 U.S. 551, 574 (2005)); see also Graham v. Florida, 560 U.S. 48, 74-75 (2010).

Moreover, our institutional role as an intermediate appellate court is a limited one.  We are bound to follow the precedents of the United States Supreme Court and the Supreme Court of New Jersey, regardless of whether those precedents might be outmoded.  See, e.g., State v. Carrero, 428 N.J. Super. 495, 511 (App. Div. 2012) (declining defendant's request that we reconsider the Supreme Court's holding on the admissibility of Alcotest results); State v. Breitweiser, 373 N.J. Super. 271, 282-83 (App. Div. 2004) (recognizing that, as an intermediate appellate court, we are bound by the Supreme Court's holdings and dicta).

In essence, defendant's sentence was authorized by the Criminal Code and affirmed on direct appeal.  It remains a legal sentence.  We therefore discern no reason to disturb the motion judge's decision, which emphasized the Supreme Court in Comer limited its decision to juveniles.

Nor are we persuaded by the contentions raised in defendant's second point.  Nearly thirty years after he was indicted; twelve years after he discovered – or could have discovered – an error in the indictment; and four years after we decided his fifth PCR application, defendant moved for resentencing arguing the

8

sentence imposed on count three was illegal because he "was convicted of a crime for which he was not indicted." Asserting his sentence was illegal, defendant argues his application was not time-barred.

To support his argument before the motion judge, defendant contended the handwritten notation on the grand jury "tally sheet,"[4] i.e., "Ct. 3 . . . 2° Robbery (Phillisa James)," demonstrated he was incorrectly charged with first-degree robbery in count three of the indictment. That count, unlike the other first-degree robbery counts, does not allege defendant was armed with a handgun during commission of the offense. Citing the grand jury transcript, defendant claimed the prosecutor suggested the jurors charge defendant with second-degree robbery on count three and, as such, his twenty-year sentence with a ten-year parole disqualifier was illegal.

Unpersuaded that the indictment failed to charge defendant with first-degree robbery, the judge rejected defendant's application for resentencing as a second-degree offender. The judge found defendant's contentions were "assertions of defects in the indictment" and, as such, they fell squarely within

---

[4] In his counseled merits brief, defendant notes the Essex County Clerk's Office mailed the grand jury tally sheets to him "in response to his pro se request for court records," and that generally, these documents are not provided to the defense in discovery.

the scope of Rule 3:10-2(c). Pertinent to this appeal, the Rule requires a defendant to raise "defects . . . in the indictment . . . before trial" and provides the failure to do so "constitutes a waiver thereof," unless the court otherwise finds "good cause." Ibid.; see also State v. Del Fino, 100 N.J. 154, 160 (1985) ("The failure of timely assertion, even of constitutional rights, may result in such a waiver."). Noting defendant first raised the argument "nearly thirty years" after he was indicted, the judge found defendant failed to demonstrate good cause.

Citing several of our opinions, the judge was convinced any "irregularities in the grand jury proceeding [we]re generally rendered harmless by a conviction of the charged crime following trial." See e.g., State v. Simon, 421 N.J. Super. 547, 551 (App. Div 2011) (recognizing "a guilty verdict is universally considered to render error in the grand jury process harmless") (quoting State v. Lee, 211 N.J. Super. 590, 599 (App. Div. 1986)).

The judge elaborated:

> A review of the partial grand jury transcript that was attached to the motion contains the prosecutor's comments to the grand jury that they may wish to return a second-degree robbery count as to . . . James . . . and the reading of the text from . . . James's statement in response to the question, "Was this man armed?" that "he kept reaching under the front of his hood[ie], like he had a gun."

. . . .

A review of the complete grand jury transcript reveals the prosecutor read N.J.S.A. 2C:15-1 to the grand jury in its entirety, including the subsection b grading provisions, which in pertinent part provide that a robbery is a first-degree robbery if in the course of committing the theft the actor attempts to kill anyone or purposely inflicts or attempts to inflict serious bodily injury or []is armed with or uses or threatens the immediate use of a deadly weapon. The complete version of the grand jury transcript reveals additional information contained in . . . James's statement that when [defendant] approached her as she was running back up the steps to the diner he stated, "I'll kill you bitch." He then dragged her down the stairs headfirst, punched her in the lip, stole her coat, and escaped in the Gray Acura. These facts would support a first-degree robbery charge regardless of whether the prosecutor "suggested" a second-degree robbery charge. The charge is in the province of the grand jur[ors], and they are not bound by the prosecutor's view. They direct how the charges are to be lodged. The grand jur[ors] may well have concluded based on the above information that [defendant] was armed when robbing James, and there was sufficient evidence before them to draw that conclusion. There is no evidence that the text of count three of the indictment, the actual charging document, and the charge that [defendant] was convicted of by a jury, is an error, as opposed to a handwritten notation that is not part of the charging document itself.

The judge further noted that defendant failed to provide the trial transcripts but there "[wa]s no reason to second guess the jury's verdict."

11

Having considered defendant's renewed contentions in view of the governing law and the record provided on appeal, we conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons stated by the motion judge in his well-reasoned decision. We add only the following brief comments.

Although the grand jury "tally sheet" was not provided to defendant until several years after trial, the indictment was provided pretrial. The protracted procedural history in this matter does not reveal any indication whatsoever that defendant was not properly noticed pretrial of the first-degree robbery charge pertaining to James. As the judge found, the grand jury was presented with her statement, which supported the first-degree charge. Moreover, defendant was charged in count four with second-degree aggravated assault by "purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life caus[ing] or attempt[ing] to cause serious bodily injury to Phillisa James." Clearly, the indictment provided defendant notice of the first-degree charge and, as such, he was sufficiently apprised to "prepare an adequate defense." State v. Catlow, 206 N.J. Super. 186, 194 (App. Div. 1985).

For the first time on appeal, defendant argues his application is not time-barred because clerical mistakes under Rule 1:13-1 can be raised "at any time."

The Rule provides, in pertinent part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative or on the motion of any party. . . ." Defendant has not cited, and our research has not disclosed, any binding authority that an indictment constitutes a "part of the record" that can be corrected at any time or would otherwise circumvent the dictates of Rule 3:10-2(c).

Defendant's pro se argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We simply add the Court in Torres did not announce a new rule of law but reaffirmed the existing requirement that sentencing courts explain the "overall fairness" of sentences imposed consecutively under the factor set forth in State v. Yarbough, 100 N.J. 627, 643-44 (1985). See Torres, 246 N.J. at 252-53. Because Torres did not depart from existing law, there is no need to remand for resentencing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2505-21