**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3274-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LESLIE KNIGHT, a/k/a
LESLIE M. PENNINGTON,

    Defendant-Appellant.

_____

Argued March 5, 2024 – Decided August 9, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-08-0569.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Michele C. Buckley, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

PER CURIAM

Following an investigation by the Union County Prosecutor's Office (UCPO), defendant Leslie Knight was charged in a multi-count Union County indictment with twenty-three offenses for double billing overtime hours and extra duty jobs while employed as a sergeant with the Plainfield Police Department (PPD).[1]  After nearly half the charges were dismissed on the State's motion, the twelve remaining charges were presented to the jury:  second-degree official misconduct, N.J.S.A. 2C:30-2(a); third-degree theft by deception, N.J.S.A. 2C:20-4(a); fourth-degree theft by deception, N.J.S.A. 2C:20-4(a) (nine counts); and fourth-degree tampering with records, N.J.S.A. 2C:21-4(a).[2]

---

[1]  The indictment was issued in August 2015.  In 2019, defendant pled guilty to disorderly conduct, N.J.S.A. 2C:33-2(a)(2), a petty disorderly persons offense, as amended from fourth-degree theft by deception.  Prior to sentencing, the court denied defendant's motion to withdraw her guilty plea.  On appeal, we reversed the trial court's order and vacated defendant's conviction for failure to provide an adequate factual basis.  State v. Knight, No. A-0838-19 (App. Div. Apr. 26, 2021) (slip op. at 5).

[2]  Most of the remaining charges were dismissed prior to trial.  During the court's final instructions, another charge was dismissed and the remaining charge, third-degree tampering with public records, N.J.S.A. 2C:28-7(a)(1), was downgraded to a disorderly persons offense.  The disposition of the downgraded charge is not contained in the record.  Neither the dismissed nor downgraded charges are the subject of this appeal.

A-3274-21

The jury convicted defendant of five offenses: third-degree theft by deception; three counts of fourth-degree theft by deception; and fourth-degree tampering with records. Pertinent to this appeal, the third-degree theft by deception count charged conduct between February 7, 2012 and October 31, 2013; the fourth-degree theft by deception counts charged conduct committed on specific dates. After ordering the appropriate mergers, the trial court sentenced defendant to a three-year probationary term conditioned upon a 120-day jail term.[3]

During the multi-day trial, the State presented the testimony of several witnesses, including UCPO Detective Dennis Donovan, who led the criminal investigation of defendant's overbilled hours after the PPD closed its internal affairs investigation. The State also introduced into evidence various documents, including Donovan's spreadsheets summarizing defendant's 2012 and 2013 overlapped hours. Defendant did not testify but called three fact

---

[3] Although not reflected in the judgment of conviction, prior to sentencing, defendant forfeited her employment with the PPD pursuant to N.J.S.A. 2C:51-2(a)(2) (requiring public employees to forfeit their positions if convicted "of a crime of the third degree or above").

witnesses on her behalf: retired PPD Captain James Abney;[4] retired PPD Captain Edward Santiago; and PPD Officer Daniel Kollmar. Defendant also presented the testimony of two character witnesses.

Defendant now appeals, raising the following arguments for our consideration:

POINT I

THE NINE SEPARATE THEFT COUNTS PRESENTED TO THE JURY SHOULD HAVE BEEN PRESENTED AS ONLY A SINGLE, AGGREGATE THEFT COUNT BECAUSE THEY WERE PART OF A SINGLE SCHEME, WITH A SINGLE INTENT, AGAINST A SINGLE VICTIM. THE IMPROPER INCLUSION OF THE MULTITUDINOUS AND DUPLICATIVE COUNTS IRREPARABLY PREJUDICED [DEFENDANT] TO THE JURY AND REQUIRES THE REVERSAL OF HER CONVICTIONS.
(Not Raised Below)

POINT II

DETECTIVE DONOVAN IMPROPERLY TESTIFIED ABOUT HIS NEGATIVE FEELINGS REGARDING [DEFENDANT]'S ENHANCED SALARY AND ALLEGATIONS OF MISCONDUCT THAT [DEFENDANT] WAS INVESTIGATED FOR BUT WERE NOT A PART OF THE CHARGES

---

[4] Abney was charged in counts twenty-one through thirty-nine of the same indictment. All charges against Abney were dismissed prior to trial on the State's motion. He is not a party to this appeal.

A-3274-21

PRESENTED AT TRIAL. AS THE TESTIMONY WAS NOT STRICKEN AND NO LIMITING I[NS]TRUC[TI]ON WAS PROVIDED, THESE COMMENTS FURTHER PREJUDICED [DEFENDANT] TO THE JURY AND ADDITIONALLY WARRANT REVERSAL AND A NEW TRIAL.

## POINT III

THE STATE'S SUMMATION WAS REPLETE WITH IMPROPER COMMENTS IN WHICH IT REPEATEDLY DEMANDED THE JURY HOLD [DEFENDANT] "ACCOUNTABLE," INTERJECTED ITS PERSONAL OPINION OF THE CASE, INFLAMED THE JURY WITH REPEATED SARCASM, AND TOLD THE JURY "YOU KNOW WHAT TO DO."
(Partially Raised Below)

## POINT IV

THE CUMULATIVE IMPACT OF THE ERRORS DESCRIBED IN POINTS I, II, AND III DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.
(Not Raised Below)

## POINT V

THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON AGGREGATE THEFT PURSUANT TO STATE V. CHILDS, [242 N.J. SUPER. 121 (APP. DIV. 1990)] OTHERWISE REQUIRING THE REVERSAL OF [DEFENDANT]'S THEFT CONVICTIONS.
(Not Raised Below)

5

## I.

Between 2012 and 2013, defendant worked as the coordinator for the PPD's administrative unit overseeing the extra duty job program. Under this program, officers were permitted to work for private entities by providing such services as, security, directing traffic, and overseeing work sites during off hours and usual work hours upon approval.

In 2012, PPD Lieutenant Michael Richards suspected defendant was showing favoritism to certain officers in her assignment of extra duty jobs. After checking attendance records, Richards noticed some of defendant's submissions for her own extra duty jobs overlapped her normally scheduled duties. Eventually, Richards notified PPD's Internal Affairs Bureau (IAB) of his findings.

Following his review of Richards' documentation, IAB Lieutenant Vincent Canavan concluded there were two days during which defendant worked extra duty jobs but had not requested time off from her regularly scheduled job. For example, defendant recorded working an extra duty traffic job all day and a court detail later that night, but received pay for her normal 9:00 to 5:00 shift. Rather than proceeding with a formal internal investigation, the two instances of double billing were deducted from defendant's pay.

A-3274-21

A short time later, Lieutenant Craig Venson became defendant's direct supervisor. Venson soon noticed defendant "wasn't spending a lot of time in the office" to complete her normal responsibilities, but regularly requested overtime. Eventually, Venson notified his superiors regarding his concerns and his memorializing memo was forwarded to the IAB. Defendant was removed from the administrative bureau while IAB detective Nora Berrio commenced an investigation. The case was then turned over to the UCPO.

Donovan identified numerous instances of double billing in defendant's time keeping between February 7, 2012 to October 21, 2013. For example, on May 29, 2012, defendant requested four hours' vacation time for her regularly scheduled eight-hour, 9:00 a.m. to 5:00 p.m. shift. That same day, defendant submitted a voucher for an extra duty job for 9:30 a.m. to 4:30 p.m.; and four overtime reports for 6:30 p.m. to 10:00 p.m., 8:00 p.m. to 10:00 p.m., 10:30 p.m. to 12:30 a.m., and 10:30 p.m. to 12:00 a.m. Defendant's billing for four hours of regular pay, plus three and one-half hours of overlapping overtime pay, totaled $375.75 for that day.

Other instances during the same timeframe followed a similar pattern – defendant either worked an extra duty job during her regular hours and failed to request time off, or submitted overtime requests that overlapped with her normal

A-3274-21

schedule, an extra duty job, or a separate overtime request. Ultimately, defendant was accused of theft totaling around $4,300.

## II.

For the first time on appeal in her overlapping first and final points, defendant essentially argues the indictment improperly alleged a third-degree theft charge aggregating each offense in a single count, and fourth-degree theft charges for each of those offenses in separate counts. Acknowledging the State may aggregate the amount of each theft for grading purposes – and her fourth-degree theft convictions were merged with the third-degree conviction for sentencing purposes – defendant nonetheless claims, as charged, the State "fram[ed her] as a habitual criminal with a propensity for stealing from the city." In the alternative, defendant contends the court's instructions on aggregate theft ran afoul of our decision in Childs.

Should we disagree with defendant's belated attack on the indictment and jury charge, she urges us to reverse on constitutional grounds. Citing our decision in State v. Hill-White, 456 N.J. Super. 1 (App. Div. 2018), defendant asserts the charging of multiple theft counts in a single indictment violated the doctrine of multiplicity and, as such, her rights to due process and protection against Double Jeopardy were infringed.

As a threshold matter, <u>Rule</u> 3:10-2(c) provides, in relevant part:

> all . . . defenses and objections based on defects in the institution of the prosecution or in the indictment . . . except [under circumstances inapplicable here] must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.

Indeed, our Supreme Court has held "the failure to timely assert defenses or objections based on defects in the indictment may constitute a waiver under R[ule] 3:10-2, even if 'constitutional rights' . . . are involved." <u>State v. Lee</u>, 211 N.J. Super. 590, 596 (App. Div. 1986) (quoting <u>State v. Del Fino</u>, 100 N.J. 154, 160 (1985)). Moreover, as we explained in <u>Hill-White</u>, "the better approach" in addressing multiplicity challenges is "to address the issue before trial by dismissing the improperly duplicative counts of the indictment." 456 N.J. Super. at 12.

Defendant fails to proffer any reason for the failure to raise her challenges to the indictment prior to trial. We therefore could deem her arguments waived, notwithstanding her contention that her constitutional rights were implicated. But even if defendant could show good cause for her delay, "the merits of the underlying assertion 'must be persuasive.'" <u>Lee</u>, 211 N.J. Super. at 596 (quoting <u>Del Fino</u>, 100 N.J. at 161). For the sake of completeness, we address defendant's challenges to the indictment and do so through the prism of the plain error

9

standard. R. 2:10-2. We employ the same standard to her newly-raised challenges to the jury charge. See State v. Wakefield, 190 N.J. 397, 473 (2007) (holding under Rules 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard").

N.J.S.A. 2C:20-2(a) provides, in pertinent part: "Conduct denominated theft . . . constitutes a single offense, but each episode or transaction may be the subject of a separate prosecution and conviction." Pursuant to N.J.S.A. 2C:20-2(b) (flush language), "[a]mounts involved in thefts . . . committed pursuant to one scheme or course of conduct . . . may be aggregated in determining the grade of the offense." The trier of fact determines the theft amount. Ibid.; see also Childs, 242 N.J. Super. at 131 ("The amount involved in a theft is not simply a sentencing factor, but is an element of the crime that must be determined by the grand jury and the finder of fact at trial.").

In Childs, we addressed a defendant's claim that he could not be prosecuted for a series of thefts when some of the allegedly illegal conduct fell outside the five-year statute of limitations. Id. at 134. At trial, the State prosecuted the defendant for all the acts, including those that fell beyond the statutory range, based on the reasoning that the thefts, taken together, constituted one continuing course of conduct. Id. at 131. We held "a theft may

be considered a constituent theft so long as the indictment for the aggregated theft is returned within five years after the last constituent theft was committed."

Id. at 134.

Pertinent to this appeal, we also recognized:

> Before aggregating the amount involved in two or more thefts, the finder of fact must first determine whether the thefts are constituent parts of a single scheme or course of conduct. Where the evidence could support either conclusion, the indictment may charge the aggregated theft in one count and each lesser theft in separate counts. In such a case, a trial judge would have to charge the jury that if the defendant is guilty of any thefts, it must determine which, if any, were part of a single scheme or course of conduct and which were not.
>
> . . . .
>
> Where an indictment contains one or more counts of aggregated thefts and also contains separate counts for each allegedly constituent theft, the trial judge should instruct the jury to return a verdict for every count, and to indicate with respect to each allegedly constituent theft whether it was part of the scheme or course of conduct charged in a particular aggregated-theft count. The usual form of verdict sheet will have to be modified to allow the jury to report this additional finding.
>
> [Id. at 131-32.]

In the present matter, we discern no error, let alone plain error, in the State's decision to charge an aggregate theft count and individual counts for each

11

constituent theft. The State's theory at trial was that defendant, in her capacity as a PPD sergeant, engaged in a plan or scheme of double billing via the overtime and extra duty job systems "she helped create" to increase her pay between February 7, 2012 and October 31, 2013. Because the evidence adduced at trial supported both separate discrete thefts and a continuing scheme, the indictment properly charged both "the aggregated theft in one count and each lesser theft in separate counts." Childs, 242 N.J. Super. at 131.

As to the adequacy of the aggregated theft charge issued here, the court informed the jury:

> If you find the State has proven every element of the offense beyond a reasonable doubt, then you must go on to determine the amount of the property involved. If you find that the amounts involved were taken in thefts committed pursuant to one scheme or course of conduct, the amounts may be added together to form a single total amount, whether stolen from one person or from several persons.

The court's instruction largely tracked the model jury charge. See Model Jury Charges (Criminal), "Theft by Deception (N.J.S.A. 2C:20-4)" (rev. April 15, 2013).

Turning to the verdict sheet, the court repeated each count for the jury's consideration, explaining how to consider each charge. Regarding the aggregate theft count, the court instructed:

As I stated in the jury instructions, you may aggregate or add together the amount of the thefts, if you find that the amounts were taken pursuant to "one scheme or course of conduct."

In other words, if, for example, you find defendant guilty of theft on more than one of the nineteen dates listed in [the aggregate theft count], you must then determine whether the property taken on two or more of those separate dates was taken pursuant to one scheme or course of conduct. If so, you may aggregate or add together only those amounts for those dates that you have found were pursuant to one scheme or course of conduct.

[(Emphasis added).]

We are satisfied the aggregate theft charge to the jury was sufficient. In essence, the court instructed the jurors that if they found defendant "guilty of any thefts, it must determine which, if any, were part of a single scheme or course of conduct and which were not." Childs, 242 N.J. Super. at 131-32. Further, utilizing the verdict sheet, the court properly instructed the jury to consider each theft charge individually before considering the aggregate theft count, i.e., count twelve whether defendant engaged in a continuous course of conduct. The jury's verdict reflects its determination of the theft amounts. See N.J.S.A. 2C:20-2(b) (flush language); Childs, 242 N.J. Super. at 131.

Nor are we persuaded by defendant's multiplicity argument. Multiplicity is the improper charging of "multiple counts of the same crime, when

defendant's alleged conduct would only support a conviction for one count of that crime." Hill-White, 456 N.J. Super. at 11. Thus, a "defendant may not be tried for two identical criminal offenses in two separate counts based upon the same conduct." State v. Salter, 425 N.J. Super. 504, 515-16 (App. Div. 2012). "The bar against multiplicity relates to the Double Jeopardy principle prohibiting 'multiple punishments for the same offense.'" Hill-White, 456 N.J. Super. at 12 (quoting Salter, 425 N.J. Super. at 515-16). The remedy for multiplicity after conviction is "setting aside all but one of the multiple convictions after the verdict." Ibid.

We discern no Double Jeopardy violation here. As previously stated, the evidence adduced at trial supported the aggregate theft and separate theft charges, and the court properly instructed the jury how to consider the charges. Moreover, although the aggregate and individual theft charges share the same essential elements, the aggregate theft charge included an additional element "that establish[ed] its grade." See State v. Lawless, 214 N.J. 594, 608 (2013); see also State v. Miles, 229 N.J. 83, 96 (2017) (recognizing under the same-elements test where "each statute contains at least one unique element," the offenses in the competing statutes are not deemed the same and a defendant may be prosecuted and punished for both). Further, as the State correctly notes in its

14

responding brief, even if defendant had been charged only with the aggregate theft offense, the jury would have heard evidence of the nineteen discrete thefts. Finally, as defendant acknowledges, the court properly merged the three separate theft convictions with the aggregate theft conviction. State v. Romero, 191 N.J. 59, 80 (2007) (quoting State v. Diaz, 144 N.J. 628, 637 (1996)) ("At its core, merger's substantial purpose 'is to avoid double punishment for a single wrongdoing.'").

## III.

In her second point, defendant argues the trial court erroneously overruled her objections to aspects of Donovan's testimony that impinged her right to a fair trial. Defendant maintains the prosecutor improperly elicited testimony that defendant nearly doubled her salary during 2012, the first year of her involvement in the improper billing scheme, and the IAB investigated certain allegations that were not referred to the UCPO for prosecution. For the first time on appeal, defendant contends the court failed to issue a limiting instruction concerning the uncharged allegations. Defendant also claims the court incorrectly permitted her statement to police to be played to the jury with Donovan's improper comments about her overtime billing. The State counters defense counsel opened the door to these lines of questioning by disclosing

15

defendant's salary during her opening statement and characterizing her as a "scapegoat."

During her opening statement, after introducing herself and thanking the jurors for their service, defense counsel declared:

> This is an alleged theft in the amount of $4300. In 2012 Ms. Knight was making $89,000 as a sworn police officer with the City of Plainfield. In 2013 due to a promotion to the role of sergeant she was making $109,000. Now, roughly $4300 over the course of 24 months breaks down to $180 a month. That breaks down to $45 a week.

During direct examination of Donovan, the prosecutor elicited testimony that Berrio was his liaison and provided documentation pertaining to IAB's investigation. Defense counsel objected to the following exchange, on the grounds that the testimony was "simply prejudicial" and Donovan made assumptions without reference to any documents to refresh his recollection:

> [PROSECUTOR]: With regard to compensation for those two years, do you recall what . . . defendant's salary was and also her total compensation?
>
> [DONOVAN]: I couldn't tell you to the exact penny. But I know in 2012, prior to her being promoted to sergeant, she was a top A patrolman making somewhere in the high eighties, but her total compensation for that year, I noted that she effectively doubled her salary that year. It was very close to doubling her salary.

16

The court overruled the objection, noting "the witness [had not] indicated any lapse in memory."

Shortly thereafter, the following exchange ensued:

> [PROSECUTOR]:  So, how do we go from base pay to total compensation?
>
> [DONOVAN]:  A couple of different ways that Sergeant Knight was able to double her salary, and one was overtime.  Quite a bit of overtime.  There was a lot of extra duty jobs.  And there was also something I noted as acting pay, that she received money from acting pay.
>
> [PROSECUTOR]:  Okay.
>
> [DONOVAN]:  There was also a way in [the PPD], and other departments I know of, when . . . you can bank your comp[ensation] time, but then at some point you cash that out.  And I saw that even when Sergeant Knight was banking her extra time, she eventually was cashing out some of that.  So, that was, the total compensation was overtime, cash out, comp[ensation] time, extra duty jobs and acting [pay].

Defense counsel objected, arguing Donovan "[wa]s bringing up items that are not charges within the indictment," such as "acting pay" and "college pay," and by "bringing up these items" Donovan was "insinuating that [they were] part of her guilt."  The court overruled the objection, finding:

> So, I view this as sort of the preliminary aspects of the investigation.

17

First of all, I want to note the following: The defense opened the door on the aspect of compensation in [defense counsel]'s opening statement. I was waiting . . . for an objection. There was none. I let it come in. So, it is axiomatic. The State is perfectly appropriate [sic] to lay out for the jury what the financial compensation was and why [Donovan] was looking at what he was looking at.

Seminal principles guide our review. "Evidence must be relevant for it to be admissible." State v. Scharf, 225 N.J. 547, 568 (2016). Evidence is relevant if it has a tendency to prove or disprove any fact of consequence to the determination of the action. N.J.R.E. 401. Relevant evidence is generally admissible, N.J.R.E. 402, although it may be excluded if its probative value is substantially outweighed by the risk of undue prejudice. N.J.R.E. 403. Accordingly, "[t]he test for relevance is broad and favors admissibility." State v. G.E.P., 458 N.J. Super. 436, 454-55 (App. Div. 2019). Evidence "need not be dispositive or even strongly probative in order to clear the relevancy bar." State v. Santamaria, 236 N.J. 390, 405 (2019) (quoting State v. Cole, 229 N.J. 430, 447 (2017)).

Our Supreme Court has recognized: "The 'opening the door' doctrine is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence

admitted by the court over objection." State v. Vandeweaghe, 177 N.J. 229, 237 (2003) (quoting State v. James, 144 N.J. 538, 554 (1996)). "The doctrine 'allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence.'" Id. at 237-38 (quoting James, 144 N.J. at 554). In criminal cases, the "doctrine operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context." James, 144 N.J. at 554. The doctrine, however, is not without limitations, and is subject to exclusion under N.J.R.E. 403. Ibid.

Given our deferential standard of review of the trial court's evidentiary decisions, Cole, 229 N.J. at 449, we discern no "clear error of judgment," State v. Koedatich, 112 N.J. 225, 313 (1988), in the decision under review. We affirm substantially for the reasons articulated by the court, adding only the following brief remarks.

In her opening statement, defense counsel "opened the door" to the testimony she deems prejudicial. Counsel disclosed defendant's salary, suggesting there was little motive for defendant to bill extra time, and asserted defendant was a "scapegoat" for larger systemic billing abuses. In particular,

defense counsel asserted the PPD's "pen and paper system . . . allows documents to either slip through the cracks or [permits] errors."  Hypothetically asking, "What happens whether there is no record," counsel stated:  "Ms. Knight was the only conceivable scapegoat in this even though she had supervisors and even though she had firsthand knowledge of the job and gave her life to it for fifteen years."  Accordingly, we discern no error in the State's examination of Donovan, which responded to defendant's scapegoat theory by explaining how defendant came under investigation.  Koedatich, 112 N.J. at 313.

IV.

In her third point, defendant challenges various comments made during the prosecutor's summation.  Initially, defendant claims the prosecutor impermissibly interjected an "accountability" theme, compounded by the prosecutor's final remark, "You know what to do."  Defendant posed no objection to the prosecutor's comments about accountability or his final remark. Defendant further argues the prosecutor "repeatedly us[ed] sarcasm to insert his personal opinion of the case, denigrate the defense, and inflame the jury." Relevant here, defense counsel objected to three rhetorical questions posed to the jury about the testimony of three defense witnesses.  The court overruled each objection.

We review a claim of prosecutorial misconduct where defense counsel raised a timely objection for harmless error. State v. R.B., 183 N.J. 308, 330 (2005). "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." Id. at 333. When a defendant does not raise a claim at trial, we analyze the belated objection under the plain error standard. R. 2:10-2. To determine whether a prosecutor's improper comments in summation warrant reversal, we assess whether the impropriety was "so egregious that it deprived the defendant of a fair trial." State v. Jackson, 211 N.J. 394, 409 (2012) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

It is beyond peradventure that "the primary duty of a prosecutor is not to obtain convictions but to see that justice is done." State v. Smith, 212 N.J. 365, 402-03 (2012); see also State v. Williams, 471 N.J. Super. 34, 43-45 (App. Div. 2022) ("reiterating seminal principles underscoring the prosecutor's responsibilities and duties"). However, the prosecution's duty to achieve justice does not forbid a prosecutor from presenting the State's case in a "vigorous and forceful" manner. R.B., 183 N.J. at 332 (quoting Frost, 158 N.J. at 82). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. (quoting Frost, 158 N.J. at 82).

Nonetheless, a prosecutor's comments should be "reasonably related to the scope of the evidence presented." State v. Williams, 244 N.J. 592, 607 (2021) (quoting Frost, 158 N.J. at 82). "Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" Wakefield, 190 N.J. at 438 (alteration in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

A.

At trial, defendant posed no objection to the prosecutor's accountability theme, which was raised first in the prosecutor's opening statement. She now challenges four comments. At the outset of his summation, the prosecutor told the jury, "We told you at the beginning [during opening statements] this case is about accountability. Accountability for your actions. Accountability for your time." The prosecutor later stated: "Accountability. Defendant knew how the system worked because she helped create it." And when summarizing Richards' testimony, the prosecutor stated: "That's what we want police officers to do. Accountability. Accountability." Finally, addressing defendant's statement, the prosecutor stated: "Accountability. While no one is beneath the laws of protection, no one is above the law. You know what to do. Thank you."

22

Citing our prior decisions, in State v. Hawk, 327 N.J. Super. 276 (App. Div. 2000), and State v. Neal, 361 N.J. Super. 522 (App. Div. 2003), defendant argues these comments implicitly suggested it was the jury's duty to hold defendant accountable for her crimes. At trial, the defense maintained the PPD's non-computerized system for requesting time off and overtime was antiquated and that verbal requests were permitted. When viewed in context, the prosecutor's "accountability" comments were not a repeated warning to the jury to hold defendant accountable for violating the law, but rather that she was accountable for accurate timekeeping her capacity as coordinator of the PPD's extra duty job program. In that vein, the comments "[we]re reasonably related to the scope of the evidence presented," see R.B., 183 N.J. at 332, and within the purview of "the jury to decide whether to draw the inferences the prosecutor urged," id. at 330.

We nonetheless agree any remarks suggesting the jury had a duty to hold defendant accountable for her criminal acts skirted the line between fair comment and misconduct. Because defendant failed to object to the remarks at trial, we reject her claim of prejudice. See R.B., 183 N.J. at 333. We conclude the remarks were not a "call to arms" as defendant contends. Cf. State v. Holmes, 255 N.J. Super. 248, 251-52 (App. Div. 1992) (recognizing the

23

prosecutor's "war on drugs" theme invoked in summation "was nothing less than a call to arms which could only have been intended to promote a sense of partisanship incompatible with [the jury's] duties"). Moreover, the jury's verdict reflects it carefully considered each charge, acquitting defendant on more than half the offenses presented for its consideration.

B.

During the prosecutor's summation, defendant raised objections to the three rhetorical questions.

Commenting on Santiago's testimony, the prosecutor stated: "Santiago gave . . . defendant authority to leave whenever she wanted. What? Does any – do any of you believe that?" The court overruled defense counsel's ensuing objection and the prosecutor continued: "Do any of you believe that? Yes, you may go and come whenever you want, and no paperwork is required, for anything."

Referencing Abney's testimony, the prosecutor asked the jurors: "Does anybody think that it's appropriate for a supervisor to have a subordinate who has power – who they have power over to ask them to authorize their overtime?"

Citing Kollmar's testimony concerning PPD's system for documenting extra duty jobs, the prosecutor commented: "And what else does he say?

They're easy to correct. This is – oh, my goodness gracious, it's pen and paper system. If only I had an abacus. If only I had –." After the court overruled defense counsel's objection, the prosecutor continued: "If only I had an abacus, if only I had a tablet and chisel where I could put these things. Folks, before computers, the world went on. People got paid, records were made, and people relied on them."

Although we may not admire the tone of the prosecutor's summation, his rhetorical comments did not constitute reversible error. Each comment was founded on the testimony presented and supported a permissible argument concerning the witnesses' credibility. Having reviewed the prosecutor's summation, which spanned more than fifty transcript pages, "within the context of the trial as a whole," State v. Feaster, 156 N.J. 1, 64 (1998), we reject defendant's argument that the remarks denigrated the defense or were otherwise improper.

V.

Finally, we reject defendant's contention, raised in point IV, that the cumulative effect of the errors committed during her trial warrants reversal. Defendant has failed to demonstrate any error or pattern of errors rising to the level, either singly or cumulatively, that denied her a fair trial. "A defendant is

25

entitled to a fair trial but not a perfect one." R.B., 183 N.J. at 334 (quoting

Lutwak v. United States, 344 U.S. 604, 619 (1953)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3274-21